IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72365-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| AARON MERCEDES JOHNSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: February 2, 2015 |

SCHINDLER, J. — The State charged Aaron Mercedes Johnson with burglary in the first degree while armed with a firearm, count I; kidnapping in the first degree while armed with a firearm, count II; rape in the first degree while armed with a firearm, count III; felony harassment, count IV; felony stalking, count V; and assault in the fourth degree, count VI. The jury found Johnson not guilty of rape in the first degree but guilty as charged on the other counts. Johnson appeals, arguing (1) insufficient evidence supports the felony stalking conviction, (2) the court abused its discretion in admitting evidence that was more prejudicial than probative, and (3) the court erred by imposing the firearm enhancements. We hold that to convict a defendant of felony stalking in violation of RCW 9A.46.110(5)(b)(ii), the State must prove beyond a reasonable doubt that after entry of an order protecting the person being stalked, the defendant follows or

harasses that person on two or more separate occasions. Because the evidence established only one occasion of harassment or following in violation of a protective order, we reverse the felony stalking conviction, and remand for entry of an order of dismissal of that conviction and resentencing.[1] In all other respects, we affirm.

## FACTS

Beginning in 2010, Aaron Mercedes Johnson and Sara Wojdyla were involved in an on-and-off romantic relationship. During the two-year relationship, Johnson and Wojdyla broke up and then got back together five to ten different times.

In April 2012, Wojdyla broke off the relationship a couple of weeks before her April 25 birthday. Wojdyla told Johnson that they were "done" and to "stop texting me, . . . stop calling me, stop contacting me." But Johnson continued to send Wojdyla text messages asking her to get back together with him. Wojdyla responded to some of the text messages, telling Johnson the relationship was over. Johnson also tried calling Wojdyla a couple of times, but she did not answer.

On Wojdyla's birthday, Johnson sent her four or five text messages asking to see her. Wojdyla refused to see him. When Wojdyla left her apartment building to go on a date with a male friend, Johnson was waiting outside. Johnson told the date Wojdyla was his girlfriend. Wojdyla's date apologized and left. Wojdyla and Johnson argued "for a little bit" before she returned to her apartment.

Over the course of the next several weeks, Johnson sent Wojdyla text messages every day telling her that he loved her. In at least two of the text messages, Johnson

---

[1] Johnson also challenges denial of the motion to suppress evidence related to the felony stalking charge. Because we reverse the felony stalking conviction, we need not address this argument.

threatened to "harm himself." Wojdyla responded to some of the text messages but did not answer his phone calls.

Beginning at approximately 8:30 p.m. on May 13, Johnson tried to contact Wojdyla. Sometime around midnight, Wojdyla changed her phone number because she "was tired of him contacting" her. Ten minutes later, Johnson e-mailed Wojdyla saying he needed to talk to her and asked her to contact him. Wojdyla did not respond and blocked all e-mail from Johnson.

On May 14, Johnson was waiting outside Wojdyla's apartment door when she went to leave for work. When Wojdyla started to ask Johnson what he was doing there, Johnson put his hand "over [Wojdyla's] mouth" and told her she was "not leaving." Wojdyla tried to "unlock" her cell phone "[t]o call 911," but Johnson "yanked it out of [her] hand" and shoved her back into the apartment. Johnson gave Wojdyla her phone so that she could call her supervisor and say that she was going to be late to work. Wojdyla said Johnson was carrying a backpack, and she could see the outline of a "billy club" in the front pocket of his hooded sweatshirt. Wojdyla testified that "[t]here was just an emptiness in [Johnson's] face" like "he had no soul," and she was "scared."

Wojdyla sat on a couch in her apartment. Johnson sat on another smaller couch near the door. Wojdyla testified that at some point, Johnson opened his backpack and she saw "a roll of paper towels, what appeared to be a Windex bottle, and some zip ties." When Johnson pulled the zip ties out of his backpack, Wojdyla asked him what he was "going to do with those." Johnson "just laughed it off" and told Wojdyla, "I'm going to tie you to yourself." When Wojdyla asked Johnson if he had his gun with him,

3

Johnson said, "[A]ctually, I do," and "lifted up his sweatshirt" to show her the gun in a holster.

Wojdyla and Johnson engaged in a lengthy conversation about their relationship. Wojdyla testified that Johnson was "fixated" on the man he saw her with on her birthday. Wojdyla testified that she told Johnson they "were going to be okay, . . . that we will be fine; we'll talk this out; we'll get through it." Wojdyla said that she "got closer to him" and told him they would be together "[b]ecause that's what he wanted. He wanted to be with me." Johnson asked if Wojdyla wanted to have sex. Wojdyla testified that she thought that if she agreed, he might let her go. Wojdyla said she told Johnson she would have sex with him but that he had to leave the gun in the living room. Johnson took the gun out of the holster and tried to give it to Wojdyla, but she refused to take it. Johnson removed the clip from the gun and set the clip and the gun on the back of a couch in the living room.

Wojdyla testified that she and Johnson went to her bedroom and had sex. Afterward, they left the apartment together. Wojdyla got in her car to drive to work. On the way to work, Wojdyla called her supervisor and her sister and told them about what had happened. Later that day, Wojdyla went to the Lacey Police Department and then went to a local hospital for a sexual assault examination.

Lacey Police Department Detective Jamie Newcomb interviewed Wojdyla and obtained a warrant to search Johnson's residence and the two vehicles in the garage. The police found Johnson in a crawl space under the bedroom floor of his townhouse. The police also found a loaded 9 mm handgun in the crawl space.

Johnson's black BMW was parked in the garage. A backpack in the car contained a knife, zip ties, a roll of duct tape, a handsaw, a roll of paper towels, gloves, a water bottle, a holder for a billy club, a drop cloth, and a hat.

Detective Newcomb arrested Johnson and advised him of his Miranda[2] rights. Johnson told Detective Newcomb that he and Wojdyla dated for approximately two years and recently broke up. Johnson admitted sending text messages to Wojdyla "asking her to get back together with him" and that he was at Wojdyla's apartment that morning. Johnson said that he went to Wojdyla's apartment because she changed her cell phone number. Johnson told Detective Newcomb that he waited outside her apartment door, and when she opened the door, he put his hand over her mouth to "keep her quiet."

> [Johnson] said [Wojdyla] opened the door and, upon seeing him, started to cry. He said at some point in there he placed his hand -- I believe "up to her mouth" or "around her mouth" was the terminology he used. I believe when we talked about it, I asked him if it was to obstruct the breathing. He said no. I think it was just -- he said something along the lines of trying to keep her quiet or to quiet her down.

Johnson denied pushing Wojdyla back into the apartment. "[H]e described it more as a -- I think he said 'hugged.' " Johnson admitted that he did not have permission to enter the apartment. Johnson admitted taking Wojdyla's phone so that she could not contact the police. Johnson admitted Wojdyla asked him to leave and he refused, telling her he "wanted to finish the conversation." Johnson told Detective Newcomb that when Wojdyla "asked him if he had his gun with him," he "raised his sweatshirt to show her the firearm." Johnson said he removed his gun at Wojdyla's

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

request and before they had consensual sex. Johnson denied "making any threats to harm" Wojdyla "but he did admit to threatening to harm himself, to kill himself."

Johnson admitted he had a backpack with him at Wojdyla's apartment. "He called the pack a survival bag." When Detective Newcomb asked him why he had a handsaw in the bag, Johnson said that it "had fallen off the wall in his garage, so he had placed it in his car." Johnson said the zip ties and duct tape were for fastening cables around his residence, "but he couldn't really . . . answer" why he carried them in his backpack to Wojdyla's apartment.

The State charged Johnson with burglary in the first degree while armed with a firearm, count I; kidnapping in the first degree while armed with a firearm, count II; rape in the first degree while armed with a firearm, count III; and felony harassment, count IV.

At the preliminary appearance on May 15, the court set bail at $50,000 and entered a no-contact order (NCO) preventing Johnson from having any contact with Wojdyla. Johnson posted bond and was released.

In late May, Wojdyla moved out of her apartment in Lacey and went to live with her father near Puyallup. On June 22 while Wojdyla was driving home after work, she noticed a black BMW behind her car. Wojdyla testified that when she took the exit from Interstate 5 to Highway 512, the BMW took the same exit. Wojdyla called 911 and told the operator she believed Johnson was following her, and she was afraid to pull over. After locating a Washington State Patrol (WSP) trooper, the 911 operator told her to drive to a nearby Chevron gas station.

Wojdyla testified that as she turned into the Chevron station, the black BMW suddenly made a left turn into a parking lot on the opposite side of the highway.

6

Trooper Jayson Caton followed the BMW into the parking lot, turned on his overhead emergency lights, and stopped the car. After confirming there was an order prohibiting Johnson from contacting Wojdyla, Trooper Caton arrested Johnson and later impounded the BMW. The State filed charges against Johnson in Pierce County for misdemeanor violation of the NCO.

A magistrate authorized the issuance of a warrant to search the BMW. The WSP found a number of items inside the BMW, including a pair of black gloves, a "Black Sox Hat," a roll of duct tape, and a plastic bag containing a pair of black sunglasses, a woman's black wig, and two receipts from a beauty supply store.

The Pierce County prosecutor dismissed the charge of misdemeanor violation of a NCO. The prosecutor in the case pending in Thurston County filed a motion to amend the information to add a charge of assault in the fourth degree on May 14 and felony stalking. The felony stalking charge was based on violation of the NCO on June 22. Johnson objected to the amendment, arguing there was insufficient evidence to support a charge of felony stalking. Johnson did not object to amending the information to add the charge of assault in the fourth degree. Johnson also filed a motion to suppress the evidence seized from his BMW.

The court granted the motion to amend the information to charge Johnson with felony stalking in violation of RCW 9A.46.110(5)(b)(ii), count V, and assault in the fourth degree, count VI. The court denied the motion to suppress but ruled only the sunglasses, wig, and receipts were admissible at trial.

A number of witnesses testified during the seven-day jury trial, including Wojdyla, Detective Newcomb, Officer Beverly Reinhold, and Trooper Caton.

Detective Newcomb testified that Johnson admitted the backpack the police found in his BMW on May 14 was the same backpack he had with him at Wojdyla's apartment earlier that day.

Officer Reinhold testified that the backpack contained a knife, zip ties, duct tape, a handsaw, paper towels, black gloves, neoprene gloves, a water bottle, a holder for a billy club, a drop cloth, and a hat. The court admitted into evidence photographs of the items seized from the backpack on May 14.

Trooper Caton testified that when he searched Johnson's BMW on June 25, he found a plastic bag on the right front passenger floorboard that contained "a woman's black wig, a pair of black sunglasses, and two Midway Beauty Supply receipts." The court admitted into evidence the black wig, the sunglasses, and the receipts.

Wojdyla testified at length. Contrary to her previous statement that Johnson immediately threatened her, Wojdyla testified that "about an hour into the conversation," Johnson threatened to kill her and then kill himself. Wojdyla admitted that Johnson brought his gun with him "a handful of times" to her apartment. Wojdyla testified for the first time at trial that when Johnson came into the apartment, he pushed her and she hit her head on the door frame; that Johnson told her, "[I]f I can't have you, no one can have you;" and that he threatened to tie her up with zip ties. The testimony established that Wojdyla did not previously make any of these statements to the police, the sexual assault nurse, or the prosecutor.

The defense called the prosecutor to testify about what Wojdyla told him. The prosecutor did not recall Wojdyla telling him that Johnson said, "If I can't have you, no

one else can." The prosecutor testified that he could not recall Wojdyla saying that she hit her head when Johnson pushed her into her apartment.[3]

The jury found Johnson not guilty of rape in the first degree. The jury found Johnson guilty of burglary in the first degree, kidnapping in the first degree, felony harassment, felony stalking, and assault in the fourth degree. By special verdict, the jury found that Johnson was armed with a firearm at the time of the commission of the crime of burglary in the first degree and kidnapping in the first degree.

At sentencing, the court found that the crimes of kidnapping in the first degree and felony harassment constituted the same criminal conduct. Johnson had no prior criminal history. With an offender score of 5, the court sentenced Johnson to a standard range sentence of 89 months confinement plus a consecutive 60-month sentence for each of the two firearm enhancements. Johnson appeals the conviction for felony stalking and imposition of the firearm enhancements.

## ANALYSIS

### Felony Stalking Conviction

Johnson contends insufficient evidence supports the conviction for felony stalking under RCW 9A.46.110(5)(b)(ii). Johnson asserts the State must prove he harassed or followed Wojdyla in violation of a protection order on two or more separate occasions, but the evidence established only one incident after entry of the NCO on May 15, 2012. The State does not agree that it must prove the violation of a protection order on more than one occasion under RCW 9A.46.110(5)(b)(ii).

---

[3] The State objected to the defense calling the prosecutor as a witness. The court overruled the objection, ruling that the deputy prosecutor was the only person who could testify about what Wojdyla did or did not tell him.

Under the Fourteenth Amendment and the Sixth Amendment of the United States Constitution, and article I, section 21 of the Washington State Constitution, a criminal defendant is entitled to " 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " Apprendi v. New Jersey, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)[4] (quoting United States v. Gaudin, 515 U.S. 506, 510, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995)). The State has the burden of proving the elements of a crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Borrero, 147 Wn.2d 353, 364, 58 P.3d 245 (2002).

The authority to define the elements of a crime "rests firmly with the legislature." State v. Torres Ramos, 149 Wn. App. 266, 271, 202 P.3d 383 (2009); State v. Evans, 154 Wn.2d 438, 447 n.2, 114 P.3d 627 (2005). When interpreting a statute, our primary objective is to ascertain the intent of the legislature. State v. Kintz, 169 Wn.2d 537, 547, 238 P.3d 470 (2010); State v. Gonzalez, 168 Wn.2d 256, 263, 226 P.3d 131 (2010). In determining the legislature's intent, we must give effect to the plain language of an unambiguous statute. See State v. Bunker, 169 Wn.2d 571, 577-78, 238 P.3d 487 (2010); Gonzalez, 168 Wn.2d at 263; State v. Jacobs, 154 Wn.2d 596, 600-01, 115 P.3d 281 (2005). Language is unambiguous if it is not susceptible to two or more reasonable interpretations. State v. Delgado, 148 Wn.2d 723, 726-27, 63 P.3d 792 (2003). If the plain language of the statute is unambiguous, the inquiry is at an end, and we enforce the statute "in accordance with its plain meaning." State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

---

[4] Alteration in original.

A person commits the crime of stalking if he or she "intentionally and repeatedly" harasses or follows a person, and the person being harassed or followed is placed in reasonable fear of injury. RCW 9A.46.110(1). RCW 9A.46.110(1) provides, in pertinent part:

> A person commits the crime of stalking if . . . :
> (a) He or she intentionally and repeatedly harasses or repeatedly follows another person; and
> (b) The person being harassed or followed is placed in fear that the stalker intends to injure the person, another person, or property of the person or of another person. The feeling of fear must be one that a reasonable person in the same situation would experience under all the circumstances; and
> (c) The stalker either:
> (i) Intends to frighten, intimidate, or harass the person; or
> (ii) Knows or reasonably should know that the person is afraid, intimidated, or harassed even if the stalker did not intend to place the person in fear or intimidate or harass the person.

Under RCW 9A.46.110(5)(a), except as provided in subsection (b), a person who stalks another is guilty of a gross misdemeanor. The statute elevates the crime of stalking from a gross misdemeanor to a class B felony in certain circumstances, including violation of an order protecting the person being stalked. RCW 9A.46.110(5)(b)(ii). RCW 9A.46.110(5)(b)(ii) states that a person is guilty of felony stalking if "the stalking violates any protective order protecting the person being

11

stalked."[5]

For purposes of the crime of stalking, RCW 9A.46.110(6)(e) defines the word "repeatedly" to mean harasses or follows "on two or more separate occasions." In Kintz, the Washington Supreme Court interpreted "separate occasion" to mean " 'a distinct, individual, noncontinuous occurrence or incident.' " Kintz, 169 Wn.2d at 548 (quoting State v. Kintz, 144 Wn. App. 515, 522, 191 P.3d 62 (2008)). The court held that to convict a person of stalking under RCW 9A.46.110, a jury must find two or more "distinct, individual, noncontinuous occurrences or incidents" of following or harassment. Kintz, 169 Wn.2d at 551. The court emphasized—"[I]t is repetition, not duration, that the legislature has made the sine qua non of stalking . . . because the

_____

5 (Emphasis added.) RCW 9A.46.110 states, in pertinent part:

[(5)](b) A person who stalks another is guilty of a class B felony if any of the following applies: (i) The stalker has previously been convicted in this state or any other state of any crime of harassment, as defined in RCW 9A.46.060, of the same victim or members of the victim's family or household or any person specifically named in a protective order; (ii) the stalking violates any protective order protecting the person being stalked; (iii) the stalker has previously been convicted of a gross misdemeanor or felony stalking offense under this section for stalking another person; (iv) the stalker was armed with a deadly weapon, as defined in RCW 9.94A.825, while stalking the person; (v)(A) the stalker's victim is or was a law enforcement officer; judge; juror; attorney; victim advocate; legislator; community corrections' officer; an employee, contract staff person, or volunteer of a correctional agency; court employee, court clerk, or courthouse facilitator; or an employee of the child protective, child welfare, or adult protective services division within the department of social and health services; and (B) the stalker stalked the victim to retaliate against the victim for an act the victim performed during the course of official duties or to influence the victim's performance of official duties; or (vi) the stalker's victim is a current, former, or prospective witness in an adjudicative proceeding, and the stalker stalked the victim to retaliate against the victim as a result of the victim's testimony or potential testimony.
    (6) As used in this section:
    . . . .
    (b) "Follows" means deliberately maintaining visual or physical proximity to a specific person over a period of time. A finding that the alleged stalker repeatedly and deliberately appears at the person's home, school, place of employment, business, or any other location to maintain visual or physical proximity to the person is sufficient to find that the alleged stalker follows the person. It is not necessary to establish that the alleged stalker follows the person while in transit from one location to another.
    (c) "Harasses" means unlawful harassment as defined in RCW 10.14.020.
    (d) "Protective order" means any temporary or permanent court order prohibiting or limiting violence against, harassment of, contact or communication with, or physical proximity to another person.
    (e) "Repeatedly" means on two or more separate occasions.

12

repetition of contacts alerts the victim (and the trier of fact) to the stalker's criminal intent, i.e., that he is purposefully targeting the victim, as opposed to coming into contact with her by chance." Kintz, 169 Wn.2d at 559-60.[6]

In State v. Parmelee, 108 Wn. App. 702, 32 P.3d 1029 (2001), we addressed whether two of the convictions for violation of a NCO "should merge into the felony stalking conviction because the statute requires more than one underlying act—repetitive behavior—to constitute stalking." Parmelee, 108 Wn. App. at 710. We held that two of the three convictions for violating the protection orders merged with the stalking conviction because they were "essential elements of the crime of felony stalking." Parmelee, 108 Wn. App. at 710-11.

> We hold that two of [the defendant]'s three convictions for protection order violations merge into the felony stalking conviction because the State was required to prove facts to support at least two of the protection order violation convictions in order to establish facts sufficient for a felony stalking conviction under RCW 9A.46.110(5)(b).

Parmelee, 108 Wn. App. at 711.

We hold that under the plain language of the statute, to convict Johnson of the crime of felony stalking, the State had the burden of proving beyond a reasonable doubt that on at least two separate occasions, he harassed or followed Wojdyla in violation of a protection order. Because the evidence established only one occasion of Johnson following or harassing Wojdyla in violation of the NCO issued on May 15, 2012, insufficient evidence supports the felony stalking conviction.

The State claims that even if the evidence supports only one occasion of following or harassing in violation of the NCO, we must remand for entry of judgment on the lesser included gross misdemeanor crime of stalking. We disagree. Because the

---

[6] Emphasis in original.

jury was not instructed on the lesser included offense, we remand to dismiss the felony stalking conviction with prejudice. See In re Pers. Restraint of Heidari, 174 Wn.2d 288, 293-94, 274 P.3d 366 (2012) (appellate court cannot remand for resentencing where jury was not explicitly instructed on lesser included offense).

ER 403 Ruling

Johnson argues the court abused its discretion by admitting evidence related to the contents of the backpack he took to Wojdyla's apartment on May 14. Johnson asserts unfair prejudice outweighed the probative value of the evidence.

Admissibility of evidence is within the discretion of the trial court. State v. Atsbeha, 142 Wn.2d 904, 913, 16 P.3d 626 (2001). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. We review a trial court's decision as to relevance for manifest abuse of discretion. State v. Gregory, 158 Wn.2d 759, 835, 147 P.3d 1201 (2006). The trial judge, not an appellate court, is in the best position to evaluate the relevancy and prejudicial effect of evidence. State v. Posey, 161 Wn.2d 638, 648, 167 P.3d 560 (2007). We will overturn the court's balancing of the danger of prejudice against the probative value of the evidence "only if no reasonable person could take the view adopted by the trial court." Posey, 161 Wn.2d at 648.

The defense filed a motion to suppress the items found in the backpack that "were not seen by the alleged victim during the incident." The defense argued those items had "little if any relevance to the charges brought by the State" and could "imply that Mr. Johnson intended to kill the victim and dispose of the body." The court denied

the motion to suppress, ruling that all of the items in Johnson's backpack were relevant to prove intent to commit the crime of burglary in the first degree and kidnapping in the first degree. Although prejudicial, the court ruled that the probative value of the evidence was not outweighed by the danger of unfair prejudice. The court ruled, in pertinent part:

> [T]he defense argument is . . . that, in nonlegal terms, introduction of this evidence would result in the State being able to argue to the jury, "Gee, ladies and gentlemen, look at all this evidence. You have zip ties. You have gloves. You have a weapon," clearly items that have very little legitimate purpose when taken into the context of this particular case. And the danger with that argument . . . is that the jury would then be allowed to infer that Mr. Johnson had an intention to commit an assault at the very least, or perhaps even a homicide. That's true. That is a danger.
>
> But what this court focuses on, and what's dispositive to this court, is the charged offenses which are burglary in the first degree while armed with a deadly weapon and kidnapping in the first degree while armed with a deadly weapon, and to a lesser extent felony harassment because all of those offenses include as an element intent or knowingly. . . . And the items at issue are indicative of the mindset of the defendant when he unlawfully entered that residence.
>
> . . . .
>
> So the court then has to conduct the balancing test of whether any probative value of this evidence is outweighed by -- substantially outweighed by undue prejudice. Clearly, it's prejudicial to Mr. Johnson . . . . However, in this court's opinion, that undue prejudice is not -- does not outweigh the probative value or relevant value of the admission of the evidence because that admission is directly indicative of the intent of Mr. Johnson when he unlawfully entered that residence. So for that reason the court denies the motion to suppress.[7]

On appeal, Johnson argues the evidence was more prejudicial than probative because the police did not seize the backpack until approximately 12 hours after Johnson left Wojdyla's apartment. Johnson also argues Wojdyla did not see all of the items found in the backpack, and there was no evidence those items were in the backpack when he went to the apartment. But the record establishes Johnson admitted

---

[7] The court agreed to give a "cautionary instruction if one is requested or if one can be properly framed." Johnson did not propose an instruction.

that the handsaw, zip ties, and duct tape were in the backpack when he was at Wojdyla's apartment. Detective Newcomb testified at length about Johnson's admissions concerning the items in the backpack and, specifically, the handsaw and zip ties. And whether Wojdyla saw the items has nothing to do with admission of the evidence to prove intent. We conclude the court did not abuse its discretion in denying the motion to suppress.

The court did not abuse its discretion in ruling the items in the backpack were relevant to prove Johnson's intent to commit the charged crimes of burglary in the first degree and kidnapping in the first degree. Further, there is no reasonable probability that the photographs of the items found in the backpack materially affected the outcome of trial. State v. Halstien, 122 Wn.2d 109, 127, 857 P.2d 270 (1993).

Firearm Enhancements

For the first time on appeal, Johnson contends the court did not have the authority to impose the firearm enhancements. Specifically, Johnson asserts the second amended information did not charge him with a firearm enhancement and did not allege the State had the burden of proving a connection between the crime and the weapon.

The defendant has the constitutional right to notification of the alleged charges. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22 (amend. 10). "In all criminal prosecutions, the accused shall . . . be informed of the nature and cause of the accusation." U.S. CONST. amend. VI. "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him." WASH.

CONST. art. I, § 22 (amend. 10). See State v. Recuenco, 163 Wn.2d 428, 436 n.7, 180 P.3d 1276 (2008).

The charging document meets constitutional standards "only if all essential elements of a crime, statutory and nonstatutory, are included in the document." State v. Vangerpen, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995). The essential elements rule requires the State in the charging document to identify the crime charged and allege facts supporting every element of the offense. Recuenco, 163 Wn.2d at 434. The purpose of the essential element rule is to "apprise the accused of the charges against him or her and to allow the defendant to prepare a defense." Vangerpen, 125 Wn.2d at 787; State v. McCarty, 140 Wn.2d 420, 424-25, 998 P.2d 296 (2000).

" 'An essential element is one whose specification is necessary to establish the very illegality of the behavior charged.' " State v. Zillyette, 178 Wn.2d 153, 158, 307 P.3d 712 (2013) (quoting State v. Ward, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)). Facts that can result in an increased penalty for the charged crime are the functional equivalent of an element, and the State must set forth in the charging documents the intent to seek an enhanced penalty. Recuenco, 163 Wn.2d at 440; Apprendi, 530 U.S. at 494 n.19.

In Recuenco, the court held that in order to impose a firearm enhancement under RCW 9.94A.533(3), the State must allege and prove beyond a reasonable doubt that the offender was "armed with a firearm" during the commission of the charged crime. Recuenco, 163 Wn.2d at 439-40. A person is "armed" if the weapon is readily

accessible and easily available for use, and there is a nexus between the defendant, the crime, and the weapon. State v. Easterlin, 159 Wn.2d 203, 206, 149 P.3d 366 (2006).

Where, as here, the defendant challenges the charging document for the first time on appeal, we construe the charging document liberally to determine whether the necessary elements appear in any form, or by fair construction may be found on the face of the document. State v. Kjorsvik, 117 Wn.2d 93, 105, 812 P.2d 86 (1991). Under Kjorsvik, the following two-prong test applies:

> (1) [D]o the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language.

Kjorsvik, 117 Wn.2d at 105-06. If the necessary elements are not found or fairly implied, we presume prejudice, we do not reach the second prong, and we reverse without prejudice. McCarty, 140 Wn.2d at 425; State v. Nonog, 169 Wn.2d 220, 226, 237 P.3d 250 (2010).

The State charged Johnson with "burglary in the first degree while armed with a deadly weapon-firearm/domestic violence" and "kidnapping in the first degree while armed with a deadly weapon-firearm/domestic violence."[8] The second amended information alleged, in pertinent part:

> **COUNT I - BURGLARY IN THE FIRST DEGREE WHILE ARMED WITH A DEADLY WEAPON-FIREARM/DOMESTIC VIOLENCE, RCW 9A.52.020(1), RCW 9.94A.825, RCW 9.94A.533(3) AND RCW 10.99.020 - CLASS A FELONY:**
> In that the defendant, AARON MERCEDES JOHNSON, in the State of Washington, on, about, or between May 13, 2012 and May 14, 2012, with intent to commit a crime against Sara M. Wojdyla, a family or household member, pursuant to RCW 10.99.020, or property therein, did enter or remain unlawfully in a building and in entering such building or while in

---

[8] Emphasis omitted.

such building or in immediate flight therefrom, the actor or another participant in the crime was armed with a deadly weapon, or did assault any person. It is further alleged that during the commission of this offense, the defendant or an accomplice was armed with a deadly weapon, to-wit: a silver and black semi-automatic handgun.

**COUNT II - KIDNAPPING IN THE FIRST DEGREE WHILE ARMED WITH A DEADLY WEAPON-FIREARM/DOMESTIC VIOLENCE, RCW 9A.40.020, RCW 9.94A.825, RCW 9.94A.533(3) AND RCW 10.99.020 - CLASS A FELONY:**
In that the defendant, AARON MERCEDES JOHNSON, in the State of Washington, on, about, or between May 13, 2012 and May 14, 2012, did intentionally abduct Sara M. Wojdyla, with intent to hold that person for ransom or reward, or as a shield or hostage, or to facilitate the commission of a felony or flight thereafter, or to inflict bodily injury on that person, or to inflict extreme mental distress on that person or on a third person, or to interfere with the performance of any governmental function. It is further alleged that during the commission of this offense, the defendant or an accomplice was armed with a deadly weapon, to-wit: a silver and black semi-automatic handgun.[9]

The second amended information specifically cites RCW 9.94A.533(3). RCW 9.94A.533(3) provides, in pertinent part:

The following additional times shall be added to the standard sentence range for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010 and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any firearm enhancements based on the classification of the completed felony crime. If the offender is being sentenced for more than one offense, the firearm enhancement or enhancements must be added to the total period of confinement for all offenses, regardless of which underlying offense is subject to a firearm enhancement.[10]

---

[9] Emphasis in original.

[10] (Emphasis added.) The second amended information also cites RCW 9.94A.825, the deadly weapon special verdict definition. RCW 9.94A.825 states, in pertinent part:

For purposes of this section, a deadly weapon is an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death. The following instruments are included in the term deadly weapon: Blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas.

19

Relying on State v. Brown, 162 Wn.2d 422, 173 P.3d 245 (2007), Johnson contends the information charging him with burglary in the first degree and kidnapping in the first degree was deficient because the information did not assert a nexus between the crime, the weapon, and him.

In Brown, the defendant argued the State did not prove beyond a reasonable doubt a nexus between the firearm and the charged crime of burglary in the first degree. Brown, 162 Wn.2d at 430. The court concluded that "the mere presence of a deadly weapon at the scene of the crime, mere close proximity of the weapon to the defendant, or constructive possession alone is insufficient to show that the defendant is armed." Brown, 162 Wn.2d at 431. The court held that a person is armed with a deadly weapon if the weapon is easily accessible, and there must be a nexus between the defendant, the crime, and the weapon. Brown, 162 Wn.2d at 431. In determining the nexus, the court must analyze " 'the nature of the crime, the type of weapon, and the circumstances under which the weapon is found.' " Brown, 162 Wn.2d at 431 (quoting State v. Schelin, 147 Wn.2d 562, 570, 55 P.3d 632 (2002)).

But the nexus between the crime, the firearm, and the defendant is not an essential element that must be alleged in the information. The nexus "between the weapon, the defendant, and the crime is definitional, not an essential element of the crime." Easterlin, 159 Wn.2d at 206. The nexus is "merely a component of what the State must prove to establish that a participant defendant was armed while committing a particular crime." Easterlin, 159 Wn.2d at 206.

Nonetheless, here, the State alleged in the information that Johnson was "armed with a firearm" while committing the crimes of burglary in the first degree and kidnapping

20

in the first degree.[11] The information specifically states that "during the commission" of the crime of burglary in the first degree and the crime of kidnapping in the first degree, Johnson was "armed with . . . a silver and black semi-automatic handgun." The jury instructions required the State to prove the nexus between the crimes and the firearm.[12]

Recuenco is distinguishable. In Recuenco, the information alleged that the defendant assaulted his spouse with a "deadly weapon," and the jury returned a special verdict finding the defendant was armed with a deadly weapon. Recuenco, 163 Wn.2d at 431-32. The Supreme Court held that the defendant was entitled to have the jury determine "if he was guilty of the crime and sentencing enhancement charged." Recuenco, 163 Wn.2d at 440. Because the jury did not find the defendant was armed with a "firearm" during the commission of the charged offense, the court concluded the sentencing court erred by imposing the firearm enhancement. Recuenco, 163 Wn.2d at 439.

Here, unlike in Recuenco, the charging document alleged a firearm enhancement in violation of RCW 9.94A.533(3), and the jury found by special verdict that Johnson

---

[11] See RCW 9.94A.533(3).

[12] Jury instruction 42 states:

For purposes of a special verdict, the State must prove beyond a reasonable doubt that the defendant was armed with a firearm at the time of the commission of the crimes in Count I - burglary in the first degree, Count II - kidnapping in the first degree, and Count III - rape in the first degree.

A person is armed with a firearm if, at the time of the commission of the crime, the firearm is easily accessible and readily available for offensive or defensive use. The State must prove beyond a reasonable doubt that there was a connection between the firearm and the defendant. The State must also prove beyond a reasonable doubt that there was a connection between the firearm and the crime. In determining whether these connections existed, you should consider, among other factors, the nature of the crime and the circumstances surrounding the commission of the crime, including the location of the weapon at the time of the crime.

A "firearm" is a weapon or device from which a projectile may be fired by an explosive such as gunpowder.

was "armed with a firearm at the time of the commission" of the crimes of burglary in the first degree and kidnapping in the first degree.

In re Personal Restraint of Delgado, 149 Wn. App. 223, 204 P.3d 936 (2009), is also distinguishable. In Delgado, because the court did not instruct the jury on the firearm enhancement, the court did not have the authority to impose a firearm enhancement at sentencing. Delgado, 149 Wn. App. at 237. In Delgado, the charging document alleged the defendants committed their crimes while "armed with a deadly weapon, to-wit: a firearm," but "did not specify that the State was charging [the defendants] under former RCW 9.94A.510(3) [(2000)], the section relating to firearm enhancements, rather than, or in addition to, . . . the section relating to deadly weapon sentence enhancements." Delgado, 149 Wn. App. at 229.

Unlike Delgado, the charging document specifically cited the firearm enhancement provision, RCW 9.94A.533(3), and did not cite the deadly weapon enhancement provision, RCW 9.94A.533(4). The second amended information alleged that Johnson was armed with "a silver and black semi-automatic handgun" while committing the crimes of kidnapping in the first degree and burglary in the first degree in violation of the firearm enhancement statute, RCW 9.94A.533(3).[13]

---

[13] The case Johnson cites in a footnote, City of Auburn v. Brooke, 119 Wn.2d 623, 836 P.2d 212 (1992), is also distinguishable. In Brooke, the court held that a citation alleging only "9.40.010(A)(2) Disorderly Conduct" did not contain the essential elements of the charged offense because it contained only a numerical recitation of the relevant statute and the title of the alleged offense. Brooke, 119 Wn.2d at 636. Here, the second amended information contains more than a numerical recitation and title of the relevant statute.

22

We reverse Johnson's conviction for felony stalking with prejudice, and remand for entry of an order of dismissal and resentencing. In all other respects, we affirm.

WE CONCUR: