# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46603-1-II |
| Respondent, | |
| v. | |
| SAMUEL TROY BURRIS, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Samuel Burris appeals his conviction of voyeurism. He argues that the trial court abused its discretion when it permitted the victim to testify about the crime's emotional impact on her and that the prosecuting attorney committed misconduct during the State's closing argument. Because the court did not abuse its discretion by admitting this evidence and because the prosecutor did not make improper argument, we affirm.

## FACTS

Burris and Jennifer Maya were in a romantic relationship from approximately February to April 2013. Their relationship deteriorated. On April 3, 2013, Burris texted Maya a message that contained still images, taken from a video, of Maya and Burris engaged in sexual intercourse. Maya reported the images to law enforcement. The State charged Burris with voyeurism.

At trial, Maya testified that before she received the text message, she had no knowledge of Burris filming her. She "never," "not once" consented to Burris either photographing or filming her while they engaged in sexual intercourse. 2 Report of Proceedings (RP) at 210. When she confronted Burris about the images and asked why he filmed her, Burris told her that he did it

"[b]ecause when you're with someone and you're being videotaped, they act different, versus someone who is not being videotaped. And I wanted to catch you in the moment without you knowing you're being videotaped." 2 RP at 210-11. Burris told Maya that he knew she would not consent if he asked to videotape her.

During direct examination, the State asked Maya if there was anything from this experience "that stands out that [she] just cannot forget?" 2 RP at 212. Burris objected and argued that the emotional impact of the crime was irrelevant and unduly prejudicial. Outside the jury's presence, Maya stated that she lost her trust in men and would not "bring any other man around [her] or [her] kids." 2 RP at 212. The trial court overruled Burris's objection. In front of the jury, Maya testified

> I won't forget the feeling I felt, the betrayal, the vulnerability of being vulnerable and not knowing it.
> I've—I'm no longer confident in having a relationship with another individual, a man, because I've—you know, I was married for a long time and I got with [Burris] and I didn't think that was possible.
> I'm not going to risk having this happen again or have it being—my kids involved. I'm just—I'm not going to be involved with anybody else.

2 RP at 219.

Burris testified that Maya acted surprised when he sent her the images. He said she had previously permitted him to film her. He introduced into evidence several nude or partially nude photographs he had taken of her. Burris described multiple incidents in which he held his phone in his hand while they engaged in sexual intercourse. Burris admitted he never asked Maya's permission to record her on those occasions, and she acted differently when he was holding his phone.

Burris further testified that while filming the video from which he sent Maya still images, he placed his phone on the dresser and left it there. He did not think it necessary to tell Maya he was using his phone to record, and Maya provided no indication she knew about the recording.

2

Burris wanted to record Maya acting "natural[ly]." 3 RP at 324. Burris admitted his goal could only be accomplished if Maya did not know about the filming. He further admitted that he did not obtain any kind of express consent from Maya to record her.

During closing argument, Burris's defense counsel focused on Maya's credibility. He emphasized that several photographs in evidence demonstrated Maya knew about the recording. In rebuttal the State argued

> Defense depicts this as a photograph of her being consensually captured on film in an adult setting. I would propose a different interpretation.
> I would propose that this is something that you will never see again from Jennifer Maya. She will never sit there in a room topless with a significant other, comfortable. She will never again sit in a room and not question, What is somebody doing? What are they up to? She will never again sit in a room—

3 RP at 385. Burris objected that the State was attempting to inflame the jury. The trial court stated that the prosecuting attorney was "pushing the edge" and told him to move on. 3 RP at 385.

The prosecuting attorney also argued the following in rebuttal:

> You have no evidence to back up the defendant's claim that she's consented in the past. . . .
> Furthermore, the instruction specifically says consent means that at the time of the act, words or conduct indicating freely given agreement. At the time of the act. So you don't get to infer consent as it's defined in the law. And that is what governs your decision-making. Nowhere anywhere in there, in this instruction, is there a subjective component. It does not say consent is established if Mr. Burris thought there was consent. It needs to be an affirmative act that Ms. Maya did indicating her involvement in this. She needs to do something, whether she says it verbally, or what have you, it needs to be an affirmative act, and it needs to be at the time of the act.

3 RP at 381-82. Burris objected that consent does not require an affirmative act. The trial court instructed the jury to refer to the jury instructions, which said that consent means "at the time of the act there are actual words or conduct indicating freely given agreement for the act." CP at 32 (Instr. 7).

3

The jury found Burris guilty of voyeurism. The jury made a special finding that Burris and Maya were members of the same household. The trial court sentenced Burris to 180 days' confinement. He appeals.

ANALYSIS

I.     RELEVANT EVIDENCE

Burris argues that the trial court erred when it permitted Maya to testify about the emotional impact of Burris's actions because the probative value of this evidence was outweighed by the danger of unfair prejudice. We disagree.

A.     Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Griffin*, 173 Wn.2d 467, 473, 268 P.3d 924 (2012). "An abuse of discretion occurs if the court's decision is manifestly unreasonable or rests on untenable grounds." *Griffin*, 173 Wn.2d at 473. The trial court is in the best position to evaluate the relevancy and prejudicial effect of evidence. *State v. Johnson*, 185 Wn. App. 655, 670, 342 P.3d 338 (2015). We will overturn "the [trial] court's balancing of the danger of prejudice against the probative value of the evidence 'only if no reasonable person could take the view adopted by the trial court.'" *Johnson*, 185 Wn. App. at 670-71 (quoting *State v. Posey*, 161 Wn.2d 638, 648, 167 P.3d 560 (2007)).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. ER 403 provides that the trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice.

B.      No Abuse of Discretion

Burris argues that Maya's testimony about her emotional reaction to the crime was more prejudicial than probative because "[e]vidence that Maya has suffered permanent emotional harm provided an inviting and heart-rending incentive to find Burris guilty." Br. of Appellant at 11. We disagree because the trial court did not abuse its discretion by finding the danger of unfair prejudice did not substantially outweigh the probative value.

To convict Burris of voyeurism, the State had to prove, in part, that Burris photographed or filmed Maya without her knowledge and consent. RCW 9A.44.115. The primary disputed issue for the jury to decide involved whether Maya consented to Burris filming her while engaged in sexual intercourse. Maya's testimony about her emotional reaction when she discovered Burris had filmed her was relevant to the issue of consent.

Maya's emotional reaction to the filming allowed the jury to better determine whether Burris filmed her without her knowledge and consent. Because Burris claimed that Maya consented to filming and photographing in the past, this evidence presented the jury with additional facts on the issue of consent. In admitting the evidence, the court found that any potential prejudice did not substantially outweigh its probative value. We cannot say that the trial court's decision is manifestly unreasonable or rests on untenable grounds. Therefore, the court did not abuse its discretion.

II.      PROSECUTORIAL MISCONDUCT

Burris argues that the prosecuting attorney committed prosecutorial misconduct during the State's closing argument by impermissibly appealing to the passion of the jury and by misstating the law on consent.

5

A.  Standard of Review

To establish prosecutorial misconduct in closing argument, a defendant must show that the prosecuting attorney's remarks were both improper and prejudicial. *State v. Kennealy*, 151 Wn. App. 861, 891, 214 P.3d 200 (2009). A prosecutor has "wide latitude" in making arguments to the jury and prosecutors are allowed to draw reasonable inferences from the evidence in closing arguments. *State v. Gregory*, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006), *overruled on other grounds by State v. W.R.*, 181 Wn.2d 757. 336 P.3d 1134 (2014).

Where, as here, the defendant objected at trial, we analyze whether the prosecuting attorney's "misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012); *State v. Anderson*, 153 Wn. App. 417, 427, 220 P.3d 1273 (2009).

A prosecutor "'should not use arguments calculated to inflame the passions or prejudices of the jury.'" *State v. Fedoruk*, 184 Wn. App. 866, 887, 339 P.3d 233 (2014) (quoting *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012)). Additionally, a prosecutor has a duty to act impartially and to argue the correct law to the jury. *State v. Swanson*, 181 Wn. App. 953, 958-59, 327 P.3d 67 (2014).

B.  Prosecutorial Misconduct

Burris first argues that the prosecuting attorney impermissibly appealed to the passion of the jury during the State's rebuttal closing argument by referencing Maya's testimony about her emotional reaction to the crime. We disagree.

The prosecuting attorney's remarks were not improper. They were made in response to the defendant's closing argument and theory of the case. A prosecutor is entitled to make fair

responses to defense counsel's arguments. *State v. Gauthier*, ___ Wn. App. ___, 354 P.3d 900, 904 (2015)

Burris argued in closing that the other photographs of Maya demonstrated that she knew Burris filmed her while they engaged in sexual intercourse. During rebuttal, the prosecuting attorney responded that the photos did not demonstrate consent. *See* 3 RP at 385. ("Defense depicts this as a photograph of [Maya] being consensually captured on film in an adult setting. I would propose a different interpretation. I would propose that this is something that you will never see again from Jennifer Maya."). The prosecuting attorney did not appeal to the passion of the jury, but did appropriately respond to Burris's closing argument. The prosecuting attorney's statements were not improper.

Burris next argues that the prosecuting attorney misstated the law during the State's rebuttal closing argument by stating that consent requires an affirmative act. We review a prosecuting attorney's "comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions." *State v. Carver*, 122 Wn. App. 300, 306, 93 P.3d 947 (2004). In addition, a prosecuting attorney's improper remarks are not grounds for reversal if the defense counsel invited or provoked the comments, the comments are a pertinent reply to defense counsel's arguments, and the comments are not so prejudicial that a curative instruction would be ineffective. *Carver*, 122 Wn. App. at 306.

Here, the prosecuting attorney's comments did not constitute misconduct. Burris stated during closing argument, "[I]f Mr. Burris believed he had consent and it was reasonable to believe that, he has consent. That's it." 3 RP at 379-80. The prosecuting attorney responded by first repeating the jury instruction defining consent as requiring "words or conduct" and then arguing that consent cannot be inferred. 3 RP at 382. In an attempt to elaborate that consent requires actual

words or conduct, the prosecuting attorney stated, "[The instruction] does not say consent is established if Mr. Burris thought there was consent. It needs to be an affirmative act that Ms. Maya did [consent]. . . . She needs to do something . . . it needs to be an affirmative act, and it needs to be at the time of the act." 3 RP at 382. While ineloquent, the prosecuting attorney did not misstate the law. In the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions, the prosecuting attorney's statements were not improper.[1]

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Johanson, C.J.

---

[1] Even if we had held that the prosecuting attorney committed misconduct, Burris has not demonstrated prejudice. The trial court instructed the jury, that consent means "at the time of the act there are actual words or conduct indicating freely given agreement for the act." CP at 32 (Instr. 7). Additionally, the trial court instructed the jury to consider only the evidence, not counsels' statements or remarks.