FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 APR 23 AM 8:30

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 76169-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TERRY JEREMIAH CONNORS, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 23, 2018 |

SCHINDLER, J. — A jury convicted Terry Jeremiah Connors of possession of a stolen motor vehicle in violation of RCW 9A.56.140(1). Connors seeks reversal, arguing sufficient evidence does not support possession or knowledge. Because sufficient evidence supports the conviction, we disagree, and affirm.

FACTS

Brian and Jennifer Desotell live in a trailer park on Yew Street Road in Bellingham. At around 5:30 a.m. on September 8, 2016, Brian left his mobile home and went outside.[1] In front of his mobile home, Brian saw Terry Jeremiah Connors in his driveway with a motorcycle helmet, standing next to a red CBR500 motorcycle. Brian had known Connors since Connors was a child.

---

[1] We refer to Brian and Jennifer Desotell by their first names for purposes of clarity and mean no disrespect by doing so.

Connors walked up on the porch and asked Brian for "tools to get the bike running." Connors said the motorcycle was his, but Brian did not believe the motorcycle belonged to Connors. Brian told Connors he was on his way to the airport. Brian said he did not have time to help him and told Connors he "needed to take the bike and go." Connors took the motorcycle and pushed it about 15 to 20 feet away in front of a neighbor's house.

Brian went back inside his mobile home and told his spouse Jennifer what had happened. Jennifer looked out the kitchen window and saw the motorcycle in a neighbor's driveway. Brian left to go to the airport.

Jennifer called 911. Connors began "pounding" on her front door. Connors asked Jennifer if he could borrow a screwdriver or a flashlight. Jennifer told him no. Connors asked Jennifer if she could help "jump-start his motorcycle." Jennifer refused and told Connors he needed to leave.

Whatcom County Sheriff's Office Deputy Kurt Devries responded to the 911 call. When Deputy Devries arrived, he saw Connors sleeping on the front porch of the Desotells' mobile home. Deputy Devries verified the motorcycle had not been reported stolen.

Deputy Devries took Connors into custody on an unrelated matter. Because the motorcycle had not been reported stolen, the motorcycle remained parked in the neighbor's driveway. Deputy Devries helped Connors collect his personal property. Connors did not possess any keys for the motorcycle or any tools.

Deputy Devries asked Connors if he wanted to bring the motorcycle helmet with him. Connors told Deputy Devries he did not want to bring the helmet and asked the deputy to throw the helmet away. Jennifer later threw away the helmet.

Jennifer and two neighbors inspected the motorcycle later that day. Jennifer, whose father was a mechanic, noticed the motorcycle appeared to have been "hot-wired." Jennifer and her neighbors found the registration for the motorcycle underneath the seat of the motorcycle. The registration showed the motorcycle belonged to Samuel Williams. Bellingham Police Department Officer Joshua Willson contacted Williams to ask if he was missing a motorcycle.

Williams lived in downtown Bellingham. He believed his motorcycle was parked next to his car in the gated parking garage attached to his apartment building. Williams checked the parking garage and discovered his motorcycle was gone.

Williams met Officer Willson at the Desotells' property. Williams confirmed the motorcycle belonged to him and the motorcycle was not in the same condition as he left it. The motorcycle "had multiple scrapes on the right side of it along the exhaust, the handlebar, the mirrors, and the pegs." The wiring next to the left handlebar where the ignition key is inserted looked "mangled," as if it had been "tampered with." Williams said the motorcycle helmet did not belong to him.

The State charged Connors with possession of a stolen motor vehicle in violation of RCW 9A.56.068 and .140(1). Brian, Jennifer, Deputy Devries, Williams, and Officer Willson testified at trial. The jury convicted Connors as charged.

ANALYSIS

Connors argues the State did not prove beyond a reasonable doubt the essential elements of possession and knowledge.

The State has the burden of proving the elements of a crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Borrero, 147 Wn.2d 353, 364, 58 P.3d 245 (2002). Under the Fourteenth Amendment and the Sixth Amendment to the United States Constitution and article I, sections 21 and 22 of the Washington State Constitution, a criminal defendant is entitled to " 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)[2] (quoting United States v. Gaudin, 515 U.S. 506, 510, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995)); State v. Polo, 169 Wn. App. 750, 762-63, 282 P.3d 1116 (2012); State v. Johnson, 185 Wn. App. 655, 666, 342 P.3d 338 (2015).

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014); State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A challenge to the sufficiency of the evidence admits the truth of the evidence. Witherspoon, 180 Wn.2d at 883. Circumstantial evidence and direct evidence are equally reliable. State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Salinas, 119 Wn.2d at

---

[2] Alteration in original.

4

201. We defer to the trier of fact on "issues of witness credibility." Witherspoon, 180 Wn.2d at 883.

Under RCW 9A.56.068(1), a person commits the crime of possession of a stolen vehicle "if he or she [possesses] a stolen motor vehicle."[3] RCW 9A.56.140(1) defines the crime of "possessing stolen property" as:

> [K]nowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto.

Possession may be actual or constructive. State v. Jones, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). "A defendant has actual possession when he or she has physical custody of the item and constructive possession if he or she has dominion and control over the item." Jones, 146 Wn.2d at 333.

Here, the court instructed the jury on the elements of the crime and actual possession:

> A person commits the crime of possessing a stolen motor vehicle when he or she possesses a stolen motor vehicle.

> Possessing a stolen motor vehicle means knowingly to possess, or dispose of a stolen motor vehicle knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto.

The court instructed the jury:

> To convict the defendant of the crime of possessing a stolen motor vehicle, each of the following elements of the crime must be proved beyond a reasonable doubt:

> (1) That on or about the 8th day of September, 2016, the defendant knowingly possessed or disposed of a stolen motor vehicle;

---

[3] Alteration in original.

5

(2) That the defendant acted with knowledge that the motor vehicle had been stolen;

(3) That the defendant withheld or appropriated the motor vehicle to the use of someone other than the true owner or person entitled thereto.

Citing State v. Callahan, 77 Wn.2d 27, 29, 459 P.2d 400 (1969), Connors argues the State showed only a momentary, passing control over the motorcycle. In Callahan, officers found drugs in the houseboat where the defendant was staying. Callahan, 77 Wn.2d at 28. The officers did not find drugs on the defendant's person but the defendant admitted he had handled the drugs earlier that day. Callahan, 77 Wn.2d at 28-29. The court concluded the admission did not show actual possession because "possession entails actual control, not a passing control which is only a momentary handling." Callahan, 77 Wn.2d at 29.

Here, unlike in Callahan, the unrebutted evidence establishes actual possession. Both Brian and Jennifer saw Connors with a motorcycle helmet standing next to the motorcycle. Connors told Brian the motorcycle belonged to him. After Brian told Connors to leave, Connors pushed the motorcycle 15 to 20 feet to the neighbor's property. Connors first asked Brian and then asked Jennifer for tools or help to jump-start the motorcycle. When Deputy Devries arrived, Connors was on the Desotells' porch and the motorcycle was where Connors had left it, in front of a neighbor's house. Drawing all reasonable inferences in favor of the State, the evidence shows Connors had physical custody and actual control over the motorcycle both before and after he arrived at the Desotells' mobile home.

Under RCW 9A.56.068(1) and .140(1), the State must prove beyond a reasonable doubt that Connors knowingly possessed a stolen motor vehicle. A person

"acts knowingly" when he or she is "aware of a fact" or "has information which would lead a reasonable person in the same situation to believe that facts [described by a statute defining the offense] exist." RCW 9A.08.010(1)(b)(i), (ii).

Connors asserts insufficient evidence demonstrates he knew the motorcycle had been stolen. We disagree. The evidence showed Connors knew the motorcycle was stolen. When Deputy Devries took Connors into custody, Connors did not have a key to the motorcycle and told the police to "throw away" the motorcycle helmet. Officer Willson testified the wires near the front of the gas tank appeared to have been "stripped." Jennifer testified the motorcycle had been hot-wired. Jennifer found the registration for the motorcycle easily accessible underneath the seat. The registration showed the motorcycle belonged to Williams. Williams did not give Connors or anyone else permission to use the motorcycle. The reasonable inference from the evidence is that Connors knew the motorcycle had been stolen.

Drawing all inferences in the light most favorable to the State, the evidence shows Connors knowingly possessed a stolen motorcycle. Sufficient evidence supports the conviction of possession of a stolen motor vehicle. We affirm the conviction.

WE CONCUR:

7