IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33174-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH FELIX DELGADO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Joseph Delgado appeals his convictions for felony stalking and

violating court no-contact orders. He argues for the first time on appeal that the State's

charging document and the court's to-convict instruction on felony stalking were

deficient because they collapsed the statutory requirement that the State prove both a

victim's subjective fear of injury and that the fear was objectively reasonable into a

requirement that Mr. Delgado's actions caused the victim to "reasonably fear" injury. He

also challenges the sufficiency of the evidence to support the stalking conviction.

We find no error and affirm. We deny the State costs on appeal due to Mr.

Delgado's continued indigence.

FACTS AND PROCEDURAL BACKGROUND

Joseph Delgado's charges in the prosecution below arose out of what his wife,

Lisa Jacobs, aptly described as their "very rocky" relationship. Report of Proceedings

(RP) at 251. The first charge arose when, on November 20, 2013, police responded to a 911 call instigated by one of Mr. Delgado's coworkers at a car dealership. Mr. Delgado handled repossessions for that dealership and for others. The coworker directed a subordinate to make the 911 call when he saw Mr. Delgado "beat[ing] the crap out of his lady" (Ms. Jacobs) in the dealership's parking lot. RP at 78.

The responding police officer learned from dispatch that a no-contact order was in place that forbad Mr. Delgado from coming near or having contact with Ms. Jacobs. Ms. Jacobs and Mr. Delgado were living separately at the time, and Ms. Jacobs had traveled to the dealership at the request of an intermediary to drop off property belonging to Mr. Delgado. Their altercation began when she insisted on leaving his belongings in the parking lot rather than taking them to where he was temporarily living nearby. Ms. Jacobs and other witnesses said that Mr. Delgado struck her in the chest, pulled her hair, slammed her head into her van, and somehow cut her hand. The State charged Mr. Delgado with felony violation of a domestic violence no-contact order, alleging he had assaulted Ms. Jacobs and created a substantial risk of serious personal injury. In connection with the charge, another no-contact order was entered prohibiting Mr. Delgado from having contact with Ms. Jacobs.

Within a week, Mr. Delgado and Ms. Jacobs had reconciled and resumed living together. But sometime before Christmas, hostility between the two escalated again. Because Mr. Delgado refused to move out of the recreational vehicle (RV) in which the

2

two had been living—an RV that Ms. Jacobs was buying under contract from an RV dealer named Dean Ford—Ms. Jacobs and her six-year-old daughter moved out. They stayed with Ms. Jacobs's friend, Marion.

On January 5, 2014, Ms. Jacobs and Marion traveled to an RV park to which Mr. Delgado had moved the RV, in order to retrieve Ms. Jacobs's belongings. Ms. Jacobs found Mr. Delgado sleeping in the RV and the two exchanged harsh words before she threatened to call the police if he did not leave. He left for a neighbor's trailer but she still called the county sheriff to report his violation of a no-contact order. When the deputy responding to the call questioned Mr. Delgado, he told the deputy he had been engaged by Mr. Ford to repossess the RV after Ms. Jacob stopped making payments.[1] Mr. Ford would later confirm this when called as a defense witness at trial, telling jurors that Ms. Jacobs notified him in December 2013 that the RV had frozen up and she was vacating it.

On January 13, 2014, Ms. Jacobs traveled to the police department to report that Mr. Delgado was leaving her voice mail messages in violation of the no-contact orders, many of which she had deleted. She saved three, which she played for an officer. The first two were a recording of Mr. Delgado's and her favorite country song, "Sweet

---

[1] There was conflicting testimony over whether the responding deputy learned that the RV had been repossessed from only Mr. Delgado, or if Ms. Jacobs told him that as well.

Annie," and a recording of someone preaching. In the last—the one that prompted Ms. Jacobs to contact police and the only one in which Mr. Delgado could be verified as the caller—Mr. Delgado called Ms. Jacobs a "worthless piece of shit," "white trailer trash," and repeatedly told her to "stay the fuck away" from his ex-girlfriend and from his brother, who he said "hates your guts."[2] RP at 536, 453.

Despite the voice mails and Ms. Jacobs's January 13 trip to the police station, she reconciled and moved in with Mr. Delgado again on or about January 19. According to Ms. Jacobs, she felt compassion when she learned Mr. Delgado was despondent over their breakup and had attempted suicide. During their temporary reconciliation, Ms. Jacobs claimed Mr. Delgado demanded that she write to his defense lawyer and recant her allegations about the violation of the no-contact order on November 20, telling her "there would be consequences" if she did not. RP at 313. She would later testify that she prepared at least three drafts before Mr. Delgado was finally satisfied with her letter, which she sent to defense counsel on January 21, 2014. A day later, she wrote a letter to the prosecutor stating she did not want the State to press any charges against Mr. Delgado. She admitted at trial that she wrote this second letter on her own.

---

[2] The deputy's recording of the third call was admitted as exhibit 16 and was played for the jury but was not transcribed. Neither party designated exhibit 16 as part of the record on appeal. We are left to rely on the witnesses', the lawyers' and the court's characterization of the exhibit.

4

Ms. Jacobs's and Mr. Delgado's reconciliation did not last. By the time of Mr. Delgado's February 2015 trial, Ms. Jacobs had not seen Mr. Delgado for about a year. She had informed the State that her recantation letters were false and coerced.

The State amended the information several times. Its final, third amended information, included the following six counts:

- Intimidating a witness (count 1), for actions taken by Mr. Delgado on or about January 13;
- Stalking (count 2), for conduct between December 26, 2013, through January 22, 2014;
- Violation of a court order (count 3), for Mr. Delgado's November 20, 2013 contact with Ms. Jacobs at the car dealership;
- Violation of a court order (count 4), for Mr. Delgado's contact with Ms. Jacobs at the RV park on January 5, 2014;
- Violation of a court order (count 5), for Mr. Delgado's January 13, 2014 voice mail left for Ms. Jacobs, and
- Harassment (count 6), for conduct on or about January 13, 2014.

Clerk's Papers (CP) at 69-73.

In the trial court, Mr. Delgado never contended that there was a defect in the State's original or amended informations or any error in the trial court's jury instructions on the stalking charge. But he did cross-examine Ms. Jacobs at length about whether she was ever placed in fear by the voice mails the State relied upon as stalking. She admitted she was not placed in fear by all of the calls:

Q.    . . . [L]et me ask you about these calls, then. Let's start out with the Joe [sic] Sweet Annie call. Did that place you in fear?
A.    It did not put me in fear.

5

Q.   Okay.
A.   But it irritated me.
Q.   Okay.  Did the preaching voice mail put you in fear?
A.   It didn't put me in fear, but it irritated me, using God's name in it.
THE COURT: I didn't hear the end.
A.   Putting God's name into it.
THE COURT: Thank you.
BY [DEFENSE COUNSEL]:
Q.   Well, he didn't speak during that, he just played someone preaching?
A.   Correct.

RP at 395.  When cross-examined about the third call, however, Ms. Jacobs testified that

it did put her in fear.

The defense also pressed her on whether she viewed the calls as threatening:

Q.   Did you—did you—did you hear in [the] message [that Joe left] a threat, that he was going to injure you?
A.   Not that I recall.
Q.   Did you take the Sweet Annie call as a threat?
A.   No.
Q.   How about the preaching?
A.   As a threat, no.

RP at 397.

The State's evidence that Ms. Jacobs had been placed in fear by the voice mails

and other conduct during the charging period included testimony from Ms. Jacobs about

earlier occasions when Mr. Delgado verbally abused her and physically assaulted her,

including punching her, spitting on her, jerking her around by her hair, knocking her to

the ground, and holding her down and driving his elbow into her temple to a point that

6

she felt she would pass out. Although she admitted that some of Mr. Delgado's actions did not make her fearful, she testified, more than once, that others did.

At the close of the State's case, the defense made a half-time motion to dismiss the harassment, intimidating a witness, and stalking charges (counts 6, 1, and 2). The trial court granted the motion only as to the harassment charge.

Following three days of trial, the jury acquitted Mr. Delgado of the witness intimidation charge (count 1) and of violating a court order on January 5, when Ms. Jacobs traveled to the RV park to pick up belongings from an RV that Mr. Delgado had been authorized to repossess (count 4). It found Mr. Delgado guilty of stalking and of two violations of court orders: one on November 20, the day of the altercation in the car dealership parking lot, and the other on January 13, when he left the offensive voice mail.

Mr. Delgado appeals.

## ANALYSIS

Mr. Delgado makes three challenges to his conviction for stalking. All are based on the fact that the crime is defined by RCW 9A.46.110(1) as requiring both subjective and objectively reasonable fear on the part of the victim, and states those requirements separately. Among other elements, it provides that a person commits the crime of stalking if he or she intentionally and repeatedly harasses or follows another person and

> the person being harassed or followed **is placed in fear** that the stalker intends to injure the person, another person, or property of the person or of another person. **The feeling of fear must be one that a reasonable**

> **person in the same situation would experience under all the
> circumstances . . . .**

RCW 9A.46.110(1)(b) (emphasis added).

Mr. Delgado argues for the first time on appeal that with respect to his conviction

for stalking, (1) the State's charging document was deficient because it collapsed

separately-stated fear requirements into a requirement that Mr. Delgado's actions caused

the victim to "reasonably fear" injury, (2) the court's to-convict instruction on felony

stalking was deficient for the same reason, and (3) insufficient evidence supports the

required elements of Ms. Jacobs's subjective and objectively reasonable fear. We

address the assignments of error in turn.

*Challenge to Third Amended Information*

A claim that an information is deficient for failing to list all of a crime's elements

is one of constitutional magnitude that may be raised for the first time on appeal. *State v.

Campbell*, 125 Wn.2d 797, 801, 888 P.2d 1185 (1995). But the failure to challenge a

defective information in the trial court affects the standard of review. Where the

challenge comes late, a rule of liberal construction is applied to discourage

"'sandbagging'" by defendants who recognize a problem with a charging document but

forgo raising it at a time when the State could cure it by amendment. *State v. Kjorsvik*,

117 Wn.2d 93, 103, 812 P.2d 86 (1991). The liberal construction standard involves a

two-step analysis: the charging document will be sufficient if the necessary facts appear

in any form, or if, by fair construction, they can be found in the information, unless—as the second step—the defendant shows that he or she was nonetheless actually prejudiced by the inartful language. *Id.* at 105-06.

The State's third amended information alleged that as a result of Mr. Delgado's actions Ms. Jacobs "was placed in a reasonable fear that the Defendant intended to injure said person and/or another person and/or said person's property and/or another person's property." CP at 63. Mr. Delgado argues that this fails to convey the required elements that Ms. Jacobs was placed in fear *and* that her fear was objectively reasonable. Instead, according to Mr. Delgado, "the charging language only requires proof of a subjective reasonable fear—fear that is reasonable based solely on the victim's perceptions and experiences." Br. of Appellant at 8.

Mr. Delgado cites no authority for this untenable construction of "reasonably fears." "Reasonable" is defined to mean "being in agreement with right thinking or right judgment : not conflicting with reason : not absurd : not ridiculous <a ~ conviction> <a ~ theory>." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1892 (1993). Given that definition, "reasonable," and hence "reasonably," cannot be construed as having a subjective component that is personal and peculiar to each individual, modified by his or

her bias and limitations.[3] "Placed in a reasonable fear" necessarily means objectively reasonable fear.

Washington case law is in accord. In *State v. E.J.Y.*, 113 Wn. App. 940, 952, 55 P.3d 673 (2002), the court construed Washington's harassment statute, which requires that a victim be placed "in reasonable fear that [a] threat will be carried out." RCW 9A.46.020(1)(b). This court held that the statute requires that the person threatened "subjectively feel fear and that fear must be reasonable." *E.J.Y.*, 113 Wn. App. at 953; *cf. State v. Read*, 147 Wn.2d 238, 243, 53 P.3d 26 (2002) (in assessing a defendant's right to a self-defense instruction under RCW 9A.16.050 (requiring action in "lawful defense" and "when there is reasonable ground to apprehend" injury), the court must consider evidence presented that the defendant "subjectively believed in good faith that he or she was in imminent danger of great bodily harm and whether this belief, viewed objectively, was reasonable").

As the State points out, Washington courts have often used the phrase "reasonable fear" as shorthand for the requirement of RCW 9A.46.110(1)(b) that a stalking victim be "placed in fear" and that his or her "feeling of fear . . . be one that a reasonable person in the same situation would experience under all the circumstances." *See State v. Johnson*,

---

[3] "Subjective" is defined to mean "peculiar to a particular individual modified by individual bias and limitations : PERSONAL"—the definition of "subjective." WEBSTER'S, *supra*, at 2275-76.

185 Wn. App. 655, 667, 342 P.3d 338 (2015) (stating that "[a] person commits the crime of stalking" if the "person being harassed or followed is placed in reasonable fear of injury"); *State v. Becklin*, 133 Wn. App. 610, 616 n.1, 137 P.3d 882 (2006) (A stalking "victim must also reasonably fear personal injury . . . ."), *rev'd on other grounds by* 163 Wn.2d 519, 182 P.3d 944 (2008); *State v. Askham*, 120 Wn. App. 872, 881, 86 P.3d 1224 (2004) ("Stalking requires proof of the following elements . . . (2) The victim reasonably fears injury to him- or herself, another, or their property.").

The third amended information reasonably apprised Mr. Delgado of the elements of the stalking charge. He does not claim that he was actually prejudiced by its wording. No constitutional error is shown.

*Challenge to Jury Instruction*

Mr. Delgado makes a similar challenge to the trial court's to-convict instruction on stalking. "[T]he failure to instruct the jury as to every element of the crime charged is constitutional error," and can be raised for the first time on appeal. *State v. Aumick*, 126 Wn.2d 422, 429, 894 P.2d 1325 (1995). We review a challenge to jury instructions de novo. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995).

The trial court's to-convict instruction on stalking varied from the Washington pattern instruction, combining the pattern instruction's second and third elements into a single element. Had the pattern instruction been used, its elements two and three would have required the State to prove beyond a reasonable doubt:

2.    That Lisa Jacobs was placed in fear that the defendant intended to injure her; [and]

3.    That the feeling of fear was one that a reasonable person in the same situation would experience under all the circumstances.

*See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL § 36.21.03, at 602 (3d ed. 2013). Instead, the trial court's instruction required the State to prove beyond a reasonable doubt:

2.    That Lisa Jacobs reasonably feared that the defendant intended to injure her.

CP at 89 (Jury Instruction 8).

The pattern instruction more closely tracks the language of RCW 9A.46.110 and we discourage parties and courts from tinkering with pattern instructions, especially to "improve" on what they view as cumbersome statutory language. But here, a good deal of case law supports "reasonably feared" as a shorthand statement of the statutory requirements. The instruction was sufficient to inform the jury of the applicable law.

### Evidence Sufficiency

Finally, Mr. Delgado challenges the sufficiency of the State's evidence to establish that his action placed Ms. Jacobs in fear that he intended to injure her or, if she was placed in fear, that her fear was objectively reasonable. He reprises his challenges to the State's case at trial, pointing to Ms. Jacobs's concession that some of Mr. Delgado's actions did not place her in fear and were not perceived by her as threatening; evidence that she repeatedly reconciled with Mr. Delgado; evidence that she simply erased many

12

of his voice mail messages before taking three (two of them fairly innocuous) to the police; and her admission that she never sought counseling or medical care. Of course, the jury was presented with this same evidence, heard the same argument, and rejected it as to the stalking charge.

On appellate review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

As noted above, the State presented evidence of occasions before and during the relevant charging period when Mr. Delgado physically and verbally assaulted Ms. Jacobs, and she testified at trial, more than once, that a number of his actions during the relevant charging period *did* place her in fear. Even Mr. Delgado's trial lawyer, in the course of making half-time motions, stated, "Judge, obviously, the victim, Mrs. Jacobs, claims that she was in fear." RP at 458.

The evidence was sufficient to establish that Mr. Delgado's actions put Ms. Jacobs in actual and objectively reasonable fear.

13

No. 33174-1-III
*State v. Delgado*

*Costs on Appeal*

Mr. Delgado asks this court to deny the State appellate costs if he is unsuccessful on appeal. Having reviewed his report and argument, the panel exercises its authority under RAP 14.2 and denies costs to the State.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

14