# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the<br>Personal Restraint Petition of:<br><br><br>AARON MERCEDES JOHNSON,<br><br>                 Petitioner. | No. 49712-3-II<br><br><br>UNPUBLISHED OPINION |

MAXA, C.J. – In this personal restraint petition (PRP), Aaron Johnson seeks freedom from restraint imposed by the sentence following his 2013 convictions of first degree burglary while armed with a deadly weapon, first degree kidnapping while armed with a deadly weapon, felony harassment, and fourth degree assault. These convictions resulted from Johnson's attack on his former girlfriend, Sara Wojdyla. Johnson also was charged with first degree rape, but the jury did not convict him of that charge.[1]

We hold that (1) sufficient evidence supports each alternative means of committing first degree kidnapping; (2) sufficient evidence supports the jury's findings that Johnson was armed with a deadly weapon during the commission of the burglary and kidnapping; (3) the merger doctrine does not apply to the first degree kidnapping conviction and the rape charge because Johnson was not convicted of the rape charge; (4) even if the trial court erred in failing to

---

[1] Johnson also was convicted of felony stalking, but as discussed below that conviction was reversed on appeal by Division One of this court. *State v. Johnson*, 185 Wn. App. 655, 666-70, 342 P.3d 338 (2015).

suppress evidence discovered in executing a search warrant of Johnson's vehicle, Johnson has not shown that admission of the evidence resulted in actual or substantial prejudice; (5) the trial court did not improperly comment on the evidence by referring to certain items in Johnson's possession as dangerous; and (6) Johnson's ineffective assistance of counsel claims fail.

Accordingly, we deny Johnson's PRP.

FACTS

Johnson and Wojdyla had been in an off and on dating relationship for approximately two years. Wojdyla definitively ended the relationship in April 2012. Johnson continued to call and send text messages to Wojdyla even after she expressly told him not to contact her. A few weeks after Wojdyla ended the relationship, Johnson accosted Wojdyla outside her apartment. Johnson also continued to send Wojdyla unwanted messages.

*May 14 Assault*

On May 14, 2012, Johnson was waiting outside Wojdyla's apartment when she left for work. He covered Wojdyla's mouth and pushed her back inside the apartment, then closed and locked the door. He pulled her phone out of her hand and would not return it. Wojdyla asked Johnson several times to let her go to work, but Johnson told her he was not going to let her leave. He also demanded that she sit down when she tried to stand.

Wojdyla noticed that Johnson had brought a "billy club" – a baton that he used in his job as a security officer – in the front pocket of his sweatshirt. Johnson also had a backpack with him. Wojdyla saw a roll of paper towels, a spray bottle, and zip ties inside the backpack. Johnson told Wojdyla that he was going to tie her up. Wojdyla noticed that Johnson's demeanor was different than usual, and she was scared. Wojdyla asked Johnson if he was carrying his gun, and he laughed and pulled up his sweatshirt to show her the gun in a holster.

2

According to Wojdyla, Johnson told her, "[I]f I can't have you, no one can have you." 6 Report of Proceedings (RP) at 804. He said he was going to kill her and then kill himself. Wojdyla believed that this threat was serious.

Johnson asked Wojdyla to have sex with him. When she initially refused, Johnson laughed at her. Wojdyla kept telling Johnson that she did not want to have sex, but she ultimately agreed because she believed that she had no other options and thought that having sex might appease Johnson.

Eventually Johnson and Wojdyla both left the apartment. Wojdyla reported the incident to law enforcement later in the day.

Law enforcement officers arrested Johnson at his house. They discovered a handgun with a round in the chamber, and a backpack containing zips ties, a roll of paper towels, a knife, duct tape, an asp (extendable baton), black gloves, a handsaw, a drop cloth, rubber gloves, and a hat.

The State charged Johnson with first degree burglary while armed with a deadly weapon, first degree kidnapping while armed with a deadly weapon, first degree rape while armed with a deadly weapon, felony harassment, and fourth degree assault. The alleged dates of the crimes were on, about, or between May 13 and May 14. Johnson was released from custody pending trial.

*June 22 Arrest and Search*

Wojdyla obtained a domestic violence protection order against Johnson that apparently included a prohibition against Johnson possessing firearms. On June 22, Wojdyla noticed a black car following her as she drove home. She believed that the car was Johnson's and she

3

called 911.  When Wojdyla pulled into a gas station, Johnson turned into a parking lot on the opposite side of the road.  Johnson was arrested for violation of the no contact order.

Law enforcement obtained a search warrant for Johnson's vehicle to search for evidence, including weapons, that Johnson had violated the no contact order.  Among other things, officers found a pair of sunglasses, a black wig, and two receipts from a beauty supply store.  The State charged Johnson with felony stalking.

Before trial, Johnson moved to suppress the evidence obtained through the search warrant on the ground that there was no probable cause to issue the warrant.  The trial court denied the motion, ruling that the commissioner properly issued the warrant.[2]

*Trial on All Charges*

At trial, Wojdyla and other witnesses testified regarding the facts recited above.  Johnson did not testify.

The State presented the knife, handsaw, and the asp as exhibits, as well as photographs of all those items.  The trial court explained to the jury it would not allow the knife, handsaw, and asp to be taken into the jury deliberation room because they were potentially dangerous.  The State published the knife, handsaw, and asp to the jury for examination in the courtroom. However, the court asked the jurors not to unsheathe the knife and handsaw or to deploy the asp for the same reason as previously explained.

Johnson called the prosecutor who was trying the case, Craig Juris, as a witness.  Juris testified that he had previously talked with Wojdyla about her interactions with Johnson, but did

---

[2] The trial court did exclude under ER 403 certain evidence obtained in the search of Johnson's car, including a roll of duct tape, a black pair of gloves, and a black hat.  The court admitted only the sunglasses, wig, and beauty supply store receipts.

not remember hearing her say that Johnson had told her, "If I can't have you, no one else can," prior to her testimony in court. 8 RP at 1166. Juris agreed that if he had heard such a statement he would have documented it. During closing argument, defense counsel argued that Juris had testified that Wojdyla never told him about Johnson's alleged statement. On rebuttal, Juris clarified that he had testified that he did not remember hearing Wojdyla repeat the statement.

During closing argument, defense counsel conceded that Johnson would have been guilty of harassment before May 14 by continually sending Wojdyla text messages. Counsel also conceded that Johnson had been armed with a gun during the incident because he always was armed, but then argued that the jury had to find more than that to impose the deadly weapon enhancements.

The jury convicted Johnson of first degree burglary while armed with a deadly weapon, first degree kidnapping while armed with a deadly weapon, felony harassment, fourth degree assault, and felony stalking. But the jury acquitted Johnson of first degree rape.

*Sentencing*

The trial court held a sentencing hearing. Defense counsel asked the court to hear testimony from Johnson's aunt as a mitigation witness. However, the court concluded that Johnson's aunt was not entitled to testify under RCW 9.94A.500 and did not permit her to testify.

The standard range sentence including the deadly weapon enhancements was 197 to 222 months. Defense counsel argued for a sentence on the lower end of the standard range, but did not ask for an exceptional downward sentence. The court sentenced Johnson to a total of 209 months in confinement.

*Direct Appeal*

Johnson appealed his convictions. *State v. Johnson*, 185 Wn. App. 655, 658, 342 P.3d 338 (2015). Division One of this court reversed Johnson's conviction of felony stalking, affirmed in all other respects, and remanded for resentencing.[3] *Id.* at 679.

On remand, the standard range sentence including the deadly weapon enhancements was 189 to 209 months. The court resentenced Johnson to a total of 198 months in confinement.

ANALYSIS

A.     PRP PRINCIPLES

We will grant appropriate relief when a petitioner establishes that he is under restraint that is unlawful for one of certain specified reasons. RAP 16.4(a)-(c). To prevail in a PRP, a petitioner must establish (1) a constitutional error that resulted in actual and substantial prejudice, or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Dove*, 196 Wn. App. 148, 154, 381 P.3d 1280 (2016), *review denied*, 188 Wn.2d 1008 (2017). The petitioner must make this showing by a preponderance of the evidence. *Id.*

B.     SUFFICIENCY OF EVIDENCE

Johnson argues that the State failed to present sufficient evidence to prove two of the alternative means of committing first degree kidnapping or to prove that he was armed with a deadly weapon for purposes of the deadly weapon sentencing enhancements the trial court imposed. We disagree.

---

[3] Johnson also challenged the denial of his motion to suppress evidence relating to the stalking charge. *Johnson*, 185 Wn. App. at 659 n.1. The court stated that it was unnecessary to address this argument because it was reversing the felony stalking conviction. *Id.*

1.    Legal Principles

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence and the court views the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Id.* Credibility determinations are made by the trier of fact and are not subject to review. *State v. McClure*, 200 Wn. App. 231, 234, 402 P.3d 355 (2017). Circumstantial and direct evidence are equally reliable. *Id.*

These standards are the same for appeals and PRPs. *See In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 364, 256 P.3d 277 (2011).

2.    Alternative Means to Commit Kidnapping

a.    Legal Background

When a court presents the jury with alternative means of committing a crime, substantial evidence must support each alternative means in order to ensure the unanimity of the jury verdict. *State v. Garcia*, 179 Wn.2d 828, 835-36, 318 P.3d 266 (2014).

Under RCW 9A.40.020, the crime of first degree kidnapping can be committed by five alternate means. *State v. Harrington*, 181 Wn. App. 805, 817-18, 333 P.3d 410 (2014). Johnson challenges the sufficiency of the evidence on two of these means. These alternative means include abducting[4] another person with intent:

(b) To facilitate commission of any felony or flight thereafter; or
(c) To inflict bodily injury on him or her; or

---

[4] "Abducting" means to restrain a person by using or threatening to use deadly force. RCW 9A.40.010(1).

(d) To inflict extreme mental distress on him, her, or a third person.

RCW 9A.40.020(1).

The trial court instructed the jury on these three alternatives. For facilitating the commission of a felony, the court specified that the felony at issue was first degree burglary or first degree rape. Johnson claims that the State did not present sufficient evidence to prove two of the means: intent to commit rape or intent to inflict extreme mental distress.

### b. Intent to Facilitate Commission of Rape

As applicable here, rape in the first degree occurs when a person "engages in sexual intercourse with another person by forcible compulsion" and threatens to use a deadly weapon. RCW 9A.44.040(1)(a). Johnson claims that the State did not present sufficient evidence to prove that he abducted Wojdyla with the intent to facilitate having sex with her by forcible compulsion.

The State presented testimony that after Johnson had restrained and threatened Wojdyla, he asked if they were going to have sex. When Wojdyla said no Johnson laughed at her, not in a humorous way but in a way that Wojdyla could not describe. Wojdyla thought to herself that this was exactly why Johnson had come to her apartment and this was what he wanted. She believed that she did not have any options other than to have sex with him.

A reasonable juror could infer from this evidence that Johnson intended to facilitate the commission of a rape against Wojdyla when he abducted her. He brought weapons to the apartment that could be used to force Wojdyla to have sex. He had zip ties that could be used to restrain Wojdyla if she refused to have sex. Wojdyla believed that the reason Johnson had come to her apartment was to have sex. Although she kept telling Johnson that she did not want to have sex, he persisted. And under the circumstances, Wojdyla did not think that she had any options other than to have sex with him.

Johnson argues that the evidence must have been insufficient because the jury acquitted him on the rape charge. However, the first degree kidnapping statute requires only that Johnson intended to facilitate the commission of rape, not that he actually committed the rape. RCW 9A.40.020(1).

We hold that when viewed in the light most favorable to the State, the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that when Johnson abducted Wojdyla he intended to facilitate the commission of a rape against her.

### c. Intent to Inflict Extreme Mental Distress

Johnson also claims that there was insufficient evidence to prove that he kidnapped Wojdyla with the intent to inflict extreme mental distress on her.

RCW 9A.40.020(1)(d) does not define "extreme mental distress." The Supreme Court has defined the term as meaning "more mental distress than a reasonable person would feel when being restrained by the threat of deadly force." *Garcia*, 179 Wn.2d at 843. The focus must be on the defendant's mental state rather than the actual distress that was inflicted, and this determination is fact specific. *Id.*

The threat of deadly force may be evidence of intent to inflict extreme mental distress, but we do not assume that the defendant intended to inflict such distress solely because the defendant showed a deadly weapon. *Id.* For example, in *Garcia* the court found no intent to inflict extreme mental distress when the defendant showed the victim a knife but did not threaten to use it. *Id.* However, actually threatening to kill the victim under circumstances where the victim believed he or she would die immediately can be evidence of additional mental distress. *Harrington*, 181 Wn. App. at 819. Threatening suicide in front of another may also be evidence of intent to inflict mental distress. *Id.* at 820.

The State presented evidence that Johnson threatened to kill himself and also to kill Wojdyla. He said that if he could not have Wojdyla, nobody could. As in *Harrington*, evidence of Johnson's threats to kill Wojdyla and himself show an intent to inflict distress beyond the distress a reasonable person would experience from an abduction by deadly force. 181 Wn. App. 818-20.

Accordingly, we hold that when viewed in the light most favorable to the State, the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that when Johnson abducted Wojdyla he intended to inflict extreme mental distress.

    3.    Armed with a Deadly Weapon

Under RCW 9.94A.825, a jury is required to make a finding by special verdict whether or not the State proved that the defendant was armed with a deadly weapon at the time of the crime. Based on such a finding, a trial court must impose a sentencing enhancement. RCW 9.94A.533(3)-(4)[5].

A defendant is armed for the purposes of the statute if (1) the weapon was readily accessible and easily available, and (2) there is a nexus between the defendant, the crime, and the weapon. *State v. Easterlin*, 159 Wn.2d 203, 206, 149 P.3d 366 (2006). "[T]he mere presence of a deadly weapon at the scene of the crime, mere close proximity of the weapon to the defendant, or constructive possession alone is insufficient to show that the defendant is armed." *State v. Brown*, 162 Wn.2d 422, 431, 173 P.3d 245 (2007). However, when the defendant had *actual* possession of the weapon during the commission of the crime, proof of a nexus between the

---

[5] RCW 9.94A.533 has been amended since the events of this case transpired. However, these amendments do not impact the statutory language relied on by this court. Accordingly, we do not include the word "former" before RCW 9.94A.533.

weapon and the crime usually is unnecessary. *State v. Hernandez*, 172 Wn. App. 537, 544, 290 P.3d 1052 (2012).

Here, the record reflects and Johnson does not contest that he had actual possession of a gun at the time of the burglary and kidnapping. Further, a reasonable juror could infer that Johnson's possession of the gun was related to his crimes because he showed it to Wojdyla while he was restraining and threatening her even though he did not actively use it. Therefore, we hold that there is sufficient evidence for a reasonable jury to find beyond a reasonable doubt that Johnson was armed with a deadly weapon for the purposes of the deadly weapon sentence enhancement.

C.    MERGER DOCTRINE

Johnson argues that his conviction of first degree kidnapping merged with his first degree rape charge. He claims that because he was acquitted of first degree rape, his conviction of first degree kidnapping must be vacated. We disagree.

The merger doctrine protects against multiple punishments for the same offense. *State v. Berg*, 181 Wn.2d 857, 864, 337 P.3d 310 (2014). Merger applies when proof that the defendant committed one crime also establishes that he or she committed another crime. *See id.* at 865-66.

But merger necessarily applies only when the defendant has been *convicted* of two or more offenses based on the same conduct. *See State v. Davis*, 177 Wn. App. 454, 460, 311 P.3d 1278 (2013) (stating that the State may charge a defendant with multiple crimes for the same acts without implicating the merger doctrine). Here, Johnson was only convicted of first degree kidnapping; he was acquitted of first degree rape. Because there were not multiple convictions for the same conduct, merger cannot apply. Therefore, we hold that Johnson's acquittal of first degree rape does not require vacating his first degree kidnapping conviction.

11

D.      DENIAL OF SUPPRESSION MOTION REGARDING SEARCH WARRANT

Johnson argues that the trial court erred by denying his motion to suppress evidence discovered pursuant to a search warrant for his car obtained after he was arrested for violation of the protection order. He claims that the search warrant was unconstitutional because it was not supported by probable cause, and that the evidence tainted the entire trial even though he was acquitted of stalking. We hold that Johnson has not met his burden of demonstrating that this alleged error caused actual and substantial prejudice as required to prevail on a PRP.

The admission of evidence based on an invalid search warrant is a constitutional error. *State v. Keodara*, 191 Wn. App. 305, 317, 364 P.3d 777 (2015). But as noted above, in a PRP the petitioner bears the burden of proving that the alleged constitutional error resulted in actual and substantial prejudice. *Dove*, 196 Wn. App. at 154. The petitioner must prove this prejudice by a preponderance of the evidence. *Id.*

The search warrant and the evidence obtained pursuant to the search warrant arose from the incident that resulted in the felony stalking charge. Division One reversed the stalking conviction on appeal, and therefore any prejudice involving the stalking charge is moot. *State v. Calhoun*, 163 Wn. App. 153, 168, 257 P.3d 693 (2011). The question here is whether Johnson has shown that the evidence actually and substantially prejudiced him with regard to his remaining convictions.

The evidence obtained pursuant to the search warrant that was admitted at trial was a pair of sunglasses, a black wig, and two receipts from a beauty supply store. These items may have indicated that Johnson planned to change his appearance to facilitate his stalking. But the items had no direct connection to any of the burglary, kidnapping, harassment, and assault crimes that allegedly had occurred over a month earlier. Johnson's identity was not at issue for those crimes

12

and he made no attempt to change his appearance while committing them. In addition, those charges were supported by separate evidence obtained when Johnson was arrested on May 14. And there is no indication that the State argued or even suggested that these items obtained pursuant to the search warrant were involved in any way with the May 14 incident.

Johnson emphasizes that the State argued that evidence could overlap and could relate to more than one charge. He claims that this argument allowed the jury to use the evidence obtained pursuant to the search warrant to convict him on all the charges. But Johnson does not explain how this evidence would have had any effect on the charges other than the stalking charge. His arguments are merely speculative. Further, Johnson's other convictions were supported by overwhelming evidence, including the unrefuted testimony of Wojdyla. Johnson does not show how the outcome of the trial would have been substantially different if the trial court had suppressed the evidence from the search warrant.

Therefore, we hold that Johnson's claim that the trial court erred in denying his suppression motion fails because he cannot demonstrate actual and substantial prejudice.

E.     JUDICIAL COMMENT ON EVIDENCE

Johnson argues that the trial court improperly commented on the evidence when he told the jury that the knife, handsaw, and asp found in Johnson's possession were potentially dangerous. We disagree.

Under article IV, section 16 of the Washington Constitution, "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." This provision prohibits judges from conveying their personal opinions on the merits of the case to the jury. *State v. Higgins*, 168 Wn. App. 845, 859, 278 P.3d 693 (2012). An instruction that

accurately states the law as it pertains to an issue in the case does not constitute an impermissible comment on the evidence. *Id.* at 859-60.

A trial court has discretion under GR 20 to substitute a "hazardous" exhibit with a facsimile. Hazardous exhibits are those that "unreasonably threaten[] the health and safety of persons handling the exhibit." GR 20(e). Firearms and weapons, including knives, are examples of hazardous exhibits. GR 20(e).

Here, the trial court informed the jury that certain evidence would be published in court but not permitted into the jury deliberation room and cautioned the jury about handling this evidence. The trial court stated,

> The purpose of admitting these photographs into evidence, 113 through 120, is because this court has ruled that the exhibits, consisting of the – what is purported to be the asp, the saw, and the knife, will not go with you back into the jury deliberation room. This court has a responsibility to keep *potentially dangerous* items away from you, so I don't want those going back – in fact, they will not go with you back into the deliberation room. The photographs will, but not the actual objects.
> . . . .
> And ladies and gentlemen, while those items are being published – that means shown to you, and you are allowed to handle them – please do not deploy what is purported to be the asp, and please do not unsheath what is purported to be the knife. And please do not take the cardboard sheath off of what is purported to be the handsaw for the reasons that I have explained.

5 RP at 711-12 (emphasis added).

The trial court's statement accurately explained to the jury why the court was placing restrictions on the knife, the handsaw, and the asp. And the fact that these items were potentially dangerous was not subject to dispute or at issue. Significantly, the court did not refer to them as "deadly weapons" or make any connection between its ruling and the merits of the case.

We hold that the trial court's statements were not improper comments on the evidence.

F.     INEFFECTIVE ASSISTANCE OF COUNSEL

Johnson argues that he received ineffective assistance of counsel at several points during the proceedings. We disagree.

1.     Legal Principles

Ineffective assistance of counsel is a constitutional error, arising from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Id.* at 457-58. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 458. Prejudice exists if there is a reasonable probability that, except for counsel's errors, the result of the proceeding would have been different. *Id.*

We apply a strong presumption that defense counsel's performance was reasonable. *Id.* Counsel's conduct is not deficient if it was based on what can be characterized as legitimate trial strategy or tactics. *Id.*

The "reasonable probability" standard for prejudice in an ineffective assistance of counsel claim is not precisely the same as the "actual and substantial prejudice" standard in a PRP. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 842, 280 P.3d 1102 (2012). However, the Supreme Court has held that a petitioner who presents a successful ineffective assistance of counsel claim necessarily establishes actual and substantial prejudice for purposes of collateral relief. *Id.* at 846-47.

2.    Conceding Johnson's Guilt

Johnson argues that during closing argument defense counsel improperly conceded his guilt to harassment and admitted that he was armed with a gun during the alleged crimes.

However, defense counsel limited the concession that Johnson had harassed Wojdyla with unwanted calls and text messages to the time period *before* the May 14 assault. The State did not charge Johnson with any crime during that time period. Therefore, defense counsel's statement was not a concession of guilt to any of the charged crimes.

And defense counsel's concession that Johnson was carrying a gun at the time of the interaction between Johnson and Wojdyla on May 14 was for the purpose of arguing that although Johnson had a gun, the State had not proven Johnson was armed with a deadly weapon in the manner required for a conviction. The statement that Johnson was armed was part of a broader argument on the legal definition of "armed" in the jury instructions and the requirement for the jury to find a nexus between the gun and the charged crime. Defense counsel argued that Johnson was not guilty according to that standard.

Accordingly, we hold that defense counsel's performance was not deficient with regard to concessions in closing argument.

3.    Calling the Prosecutor as a Witness

Johnson argues that defense counsel's decision to call the prosecutor who tried the case as a witness allowed the prosecutor to improperly vouch for Wojdyla's credibility and resulted in prosecutorial misconduct.

Generally, the decision whether to call a particular witness is presumed to be a matter of trial tactics. *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 545, 397 P.3d 90 (2017). Here, calling the prosecutor effectively impeached Wojdyla's credibility. Wojdyla testified that she told the

prosecutor that Johnson made a key statement to her: that if he could not have Wojdyla, nobody could. The prosecutor admitted that he did not remember Wojdyla telling him about such a statement. He also admitted that if he had heard such a statement, he would have documented it. This testimony could have diminished Wojdyla's credibility or reduced the weight the jury placed on her testimony. Therefore, defense counsel had a reasonable tactical reason for calling the prosecutor as a witness.

Accordingly, we hold that it was not deficient performance for defense counsel to call the prosecutor as a witness.

4.    Failure to Object

Johnson argues that defense counsel's performance was deficient for failing to object to the trial court's alleged comment on the evidence and to the alleged prosecutorial misconduct.

Where a claim of ineffective assistance of counsel is based on defense counsel's failure to object, the defendant must show that the objection would likely have been sustained. *State v. Fortun-Cebada*, 158 Wn. App. 158, 172, 241 P.3d 800 (2010).

Johnson argues that it was deficient performance for defense counsel to fail to object to the trial court's improper judicial comment. However, as discussed above, we hold that the trial court did not improperly comment on the evidence. Therefore, Johnson cannot show that an objection would have been sustained.

Johnson also argues that it was deficient performance for defense counsel to fail to object when the prosecutor committed misconduct by suggesting in closing argument that defense counsel had lied to the jury.[6] It is misconduct for a prosecutor to impugn the role or integrity of

---

[6] Johnson does not identify prosecutorial misconduct as a ground for relief; he mentions it only in the context of ineffective assistance of counsel. Further, he did not object to the prosecutor's statement in the trial court, which generally would result in a waiver of a prosecutorial

defense counsel. *State v. Lindsay*, 180 Wn.2d 423, 431-32, 326 P.3d 125 (2014). On the other hand, "[a] decision not to object during summation is within the wide range of permissible professional legal conduct." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 717, 101 P.3d 1 (2004).

Here, the prosecutor argued as follows on rebuttal:

Counsel tells you over and over and over that Ms. Wojdyla lied, that Ms. Wojdyla lied, that Ms. Wojdyla lied because [there] were inconsistencies, there was inaccurate memories [sic]. Well, if that's the case, Mr. Lapin lied to you. Mr. Lapin told you that I took the stand and said Ms. Wojdyla had never said those things to me. What I told you was, actually, I don't remember ever hearing her say those things to me. Mr. Lapin told you that I made a big deal with Ms. Cole when I asked her questions. This was just from last week. Ms. Archer's the one that actually questioned Ms. Cole, not me. Is that lying?

9 RP at 1351.

The prosecutor's comment seems to suggest that defense counsel had lied to the jury. But what he appears to have been arguing was that neither Wojdyla nor defense counsel was lying just because they made inconsistent statements or had inaccurate memories. Therefore, the statement was not necessarily objectionable. In addition, defense counsel may have had a strategic reason for not objecting. Counsel may not have wanted to highlight the fact that he did mischaracterize the prosecutor's testimony.

Accordingly, we reject Johnson's claim of ineffective assistance of counsel for failure to object.

5. Defense Counsel's Performance at Sentencing

Johnson argues that defense counsel's performance at the original sentencing hearing was deficient because he failed to propose an exceptional downward sentence and failed to object to

---

misconduct claim. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). Therefore, we address this argument only in the context of ineffective assistance of counsel.

the court's decision not to hear from his aunt. However, Johnson's original sentence was vacated and he was resentenced on remand.

An assignment of error is moot if the court cannot provide the appellant with any remedy. *Calhoun*, 163 Wn. App. at 168. An assignment of error regarding ineffective assistance at the original sentencing is moot if the defendant has been resentenced because the defendant cannot show prejudice. *Id.* at 168-69.

Accordingly, we hold that Johnson's claims of ineffective assistance at the original sentencing hearing are moot.

## CONCLUSION

We deny Johnson's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

JOHANSON, J.

MELNICK, J.