IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| In the Matter of the Detention of | No. 77812-9-I |
| --- | --- |
| | DIVISION ONE |
| FRANKLIN DAVID ABELLERA | UNPUBLISHED OPINION |
| | FILED: August 12, 2019 |

CHUN, J. — In 1980 and 1981, Franklin Abellera committed numerous sex offenses against multiple women. In 1981, he pleaded guilty to rape in the second degree, indecent liberties with forcible compulsion, assault in the second degree, and burglary in the first degree. He then spent seven years at an inpatient sex offender treatment program. After his release, in 2009, he committed another sex offense, resulting in a 2010 guilty plea to rape in the third degree and assault in the second degree.

Given Abellera's history, the State sought to have him committed as a sexually violent predator (SVP). The matter proceeded to trial, where the State's expert witness estimated that Abellera had committed 31 to 35 rapes and attempted rapes. The expert opined that Abellera would not be able to control his urge to force a woman into nonconsensual sex if presented with the opportunity. The defense's expert testified that Abellera did not have a mental

abnormality and that the facts of the 2009 offense suggested an "opportunistic crime" as opposed to Abellera lacking control.

A jury found Abellera to be an SVP, and the trial court ordered him civilly committed. On appeal, Abellera raises a number of evidentiary issues and challenges the sufficiency of the State's evidence to prove that he is an SVP. For the reasons discussed herein, we affirm.

I.
BACKGROUND

In 1981, the State charged Abellera with 10 sex offenses committed against six different women. Abellera pleaded guilty to burglary in the first degree, indecent liberties with forcible compulsion, assault in the second degree, and rape in the second degree. The trial court suspended Abellera's sentence on the condition that he complete an inpatient sex offender treatment program at Western State Hospital. In 1989, program staff recommended that the court determine Abellera successfully completed the program and release him.

In April 1990, after his discharge from the program, Abellera began a job at a bakery. During this time, Abellera engaged in behavior that increased the risk of reoffending—such as consuming pornography, drinking alcohol, and hiring prostitutes.

In 2009, Abellera drove to a high prostitution area to hire a prostitute. A woman, K.W., approached Abellera and asked him for a ride. Once K.W. was in the car, Abellera drove to a dead-end street and raped her.

On May 27, 2010, Abellera pleaded guilty to rape in the third degree and assault in the second degree. The court sentenced Abellera to five years' imprisonment.

On September 11, 2014, while Abellera was serving his sentence, the State filed a Petition for Commitment as a Sexually Violent Predator.

Abellera's SPV trial began in 2017. The State presented an expert, Dr. Dale Ray Arnold, who diagnosed Abellera with "other specified paraphilic disorder" and antisocial and avoidant personality traits that exacerbated his disorder. Dr. Arnold summarized the details of six sexual assaults Abellera committed in the 1980s and estimated that, in total, Abellera had committed 31 to 35 rapes and attempted rapes. In Dr. Arnold's opinion, Abellera had a mental abnormality such that he would not be able to control his urge to force a woman into nonconsensual sex if presented with the opportunity in the future.

Abellera presented an expert, Dr. Joseph Plaud, who testified that Dr. Arnold's diagnosis was "made up." Dr. Plaud additionally stated that Abellera believed K.W. was a prostitute at the time of the assault. Dr. Plaud opined that the 2009 offense differed so significantly from the 1980s offenses that it did not demonstrate a mental abnormality or lack of volitional control.

The jury reached a verdict finding Abellera to be an SVP. The trial court issued an Order of Commitment.

Abellera appeals.

## II.
## ANALYSIS

### A.    Due Process

Abellera argues the trial court violated his due process right to present evidence in his defense by prohibiting certain testimony by Dr. Plaud and by preventing a Community Corrections Officer (CCO) from testifying. The State contends the trial court exercised sound discretion in excluding the evidence under ER 401, ER 402, and ER 403. We agree with the State as to the testimony of both Dr. Plaud and the CCO.

### 1.  Dr. Plaud's Testimony

Abellera claims the trial court violated his right to due process by preventing Dr. Plaud from stating facts that supported his opinion that Abellera believed K.W. was a prostitute.[1] The State asserts that Abellera waived the issue and that his claim fails on the merits. We agree with the State.

At trial, the State moved to prevent Abellera from trying to impeach K.W.'s account of the rape through expert testimony. In response, defense counsel stated, "I don't know that that's anyone's intent to impeach this woman or attack her credibility, but there are certainly some facts in the case that I think probably everybody agrees are the facts that are relevant and do need to come out." The court ruled that Abellera could not argue that he did not rape and assault K.W.,

---

[1] In his Opening Brief, Abellera stated that he wanted the trial court to admit the following facts: He believed that he had picked up a prostitute (K.W.) and was engaging in sex acts. Abellera then forced her out of the car because he thought her pimp had followed them. Abellera also "believed there was a video that showed [K.W.] removing her underwear before getting into his car."

but reserved ruling on whether he could raise other inconsistencies and impeach through expert testimony.

The State then argued that, because Dr. Plaud had accepted the "official version"[2] of the facts, the court should not allow him to testify that the rape did not occur. Abellera said that while Dr. Plaud would testify that the factual circumstances of the 2009 offense do not suggest Abellera had a mental abnormality, "he's not going to speculate and offer any extra version because he wasn't there." The court ruled that Dr. Plaud could not challenge K.W.'s report of the assault because it constituted speculation:

> As it relates to the defense expert, I am going to grant the State's motion. I am not going to let the defense expert essentially impugn the credibility of K.W. because I think that's pure speculation on his part. I don't think it's relevant under 401 and 402. And under 403, I think there's little to no probative value that would be outweighed by prejudice to the State.
>
> With that said, if there are parts of this -- that incident, the 2009 incident, that the expert felt was important because it was different than the prior incidents, and that factored into his opinions, I think he should be allowed to do that.
>
> But I'm not going to -- for example, he is not going to be allowed to say, you know, K.W. reported this, but that just doesn't make sense. I don't think that's appropriate. That's speculation. It is not relevant.

---

[2] The official version of the facts refers to those facts that Abellera admitted to in the Statement of Defendant on Plea of Guilty to Felony Sex Offense:

> On 09/13/2009 in King County, WA I engaged in sexual intercourse w/ K.W. who I was not married to and she did not consent to sexual intercourse with me and her lack of consent was clearly expressed by her (K.W.'s) words and conduct. I did this by digitally penetrating her vagina despite her telling me to "stop."

a. Waiver

The State argues that Abellera waived any challenge to the court limiting Dr. Plaud's testimony because he stated at trial that no evidence supported K.W. being a prostitute and that whether she was a prostitute was irrelevant. Abellera claims that when he made those statements, he was merely trying to clarify that he would not attempt to impeach K.W. through Dr. Plaud. We determine Abellera waived the issue.

Abellera stated multiple times at trial that he would not elicit facts as to whether K.W. was a prostitute. Specifically, counsel told the court that the defense lacked evidence that K.W. was a prostitute and the issue was irrelevant:

> We have no intent of eliciting testimony that this woman was a prostitute. There's no -- we have no evidence that she was a prostitute.

> It's not really relevant to the issue of whether or not our client committed offense against her and whether or not being a prostitute makes our client more or less likely to be a sexually violent predator, because, really, that's the only issue here. And so we're not intending to infer one way or another that that is actually true with respect to this woman.

> But I do think that . . . number one is the case can't be sanitized. It is what it is. The facts, to a large extent, are what they are, even based on K.W.'s account.

Additionally, when discussing whether Dr. Plaud based his opinion on the "official version" of the assault or Abellera's account, defense counsel again said that the issue of whether K.W. was a prostitute was irrelevant:

> We anticipate based on our expert's deposition that he is going to come in and, at the end of the day, admit that, yeah, I mean, we have to go by, to a large extent, the official facts. And no matter what, it wouldn't have changed his opinion. So we're not trying to get in information of whether she was a prostitute or not.

6

. . .

> But that's really all I had to say about the prostitution issue. We don't intend to infer anything about this woman because it's not relevant to whether or not Mr. Abellera has a mental abnormality, and it's really not relevant to his risk or things that this jury really has to consider. So I think, to a large extent, we're all in agreement on that issue.

The defense's briefing was also consistent with its position that it did not intend to elicit facts that K.W. was a prostitute.

"A party may not remain silent as to a claimed error during trial and raise its objection for the first time on appeal." State v. Teuber, 109 Wn. App. 640, 644, 36 P.3d 1089 (2001) (citing State v. Guloy, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985)).

Based on the record, Abellera never raised the issue, on due process grounds or otherwise, that the trial court should allow Dr. Plaud to testify to the facts that supported Abellera's belief that K.W. was a prostitute. Indeed, he expressly stated that he had no evidence that K.W. was a prostitute and that the issue was irrelevant. Abellera does not argue in his briefing that the alleged error in limiting the testimony constitutes a manifest injustice or satisfies any of the other criteria under RAP 2.5, such that we should allow him to raise the error for the first time on appeal. Accordingly, we conclude Abellera waived any objection to the trial court's ruling limiting Dr. Plaud's testimony.

b. Relevance

Assuming no waiver, Abellera's argument still fails on the merits. He contends that the trial court violated his right to due process when it limited

Dr. Plaud's testimony. The State argues the court properly limited Dr. Plaud's testimony based on lack of relevance. Because the trial court did not manifestly abuse its discretion in limiting Dr. Plaud's testimony on relevance grounds, we determine the trial court properly excluded it.

We review a trial court's ruling on the admissibility of evidence for a manifest abuse of discretion. State v. Johnson, 185 Wn. App. 655, 670, 342 P.3d 338 (2015). We will overturn the trial court's determination on relevance only if no reasonable person would adopt the same view as the court. Johnson, 185 Wn. App. at 670-71.

A court may admit only relevant evidence. ER 402. Under ER 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." A trial court's exclusion of irrelevant evidence does not violate a defendant's right to due process. In re Det. of Turay, 139 Wn.2d 379, 403-04, 986 P.2d 790 (1999).

Here, Dr. Plaud stated in his deposition that he was "assuming for the purposes of risk evaluation that [Abellera raped K.W.]" and that he did not base his evaluation on Abellera's version of the events. Because Dr. Plaud based his assessment on the "official version" of the facts, any facts to the contrary were irrelevant. On appeal, Abellera argues the court prevented him from seeking to admit facts to support his belief that K.W. was a prostitute, but the particular facts suggested a rape did not occur and contradicted the "official version" of the facts.

These were therefore irrelevant. We conclude that the trial court did not err by excluding the facts under ER 401 and ER 402.

2. CCO Testimony

Abellera next claims the trial court erred by preventing a CCO, who is an employee of the Department of Corrections (DOC), from testifying that the area where Abellera picked up K.W. was a high prostitution area. The State contends the court correctly barred the testimony on relevance and hearsay grounds. We determine the court did not abuse its discretion by excluding the testimony.

At trial, the State moved to preclude CCO Conaty, whom the DOC had designated as a CR 30(b)(6) witness, from testifying as to the high rate of prostitution in the area where Abellera picked up K.W. The State claimed that ER 401, ER 402, and ER 403 barred the evidence. It additionally argued testimony was hearsay, because the CCO obtained the information from the Des Moines Police Department.

Abellera argued the evidence was relevant for two reasons. First, he contended that it went to his state of mind because it made his belief that K.W. was a prostitute more reasonable. Second, he said that, because the DOC would not allow Abellera to go to high prostitution areas once released, it showed a reduced future risk of committing the same crime. Additionally, Abellera argued that CCO Conaty's testimony was not hearsay because it constituted an admission of a party opponent under ER 801(d)(2).

The trial court ruled the testimony was not relevant to show Abellera's state of mind because the defense did not show "some bridge between what Mr. Abellera thought and then [sic] DOC's statement." For the purpose of showing that the DOC's supervision would not let Abellera go to high prostitution areas, the court decided that even if the testimony was relevant, ER 403 precluded it because unfair prejudice and confusion outweighed the minimal probative value. The court further ruled that the statement was inadmissible hearsay because the State of Washington, not the DOC, was the party opponent.

  a. Relevance

In an SVP trial, "evidence is relevant only if it increases or decreases the likelihood that a fact exists that is consequential to the jury's determination whether the respondent is a sexually violent predator." In re Detention of West, 171 Wn.2d 383, 397, 256 P.3d 302 (2011). Juries consider three elements when determining whether a respondent constitutes an SVP:

> (1) that the respondent has been convicted of or charged with a crime of sexual violence, (2) that the respondent suffers from a mental abnormality or personality disorder, and (3) that such abnormality or disorder makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility.

West, 171 Wn.2d at 397 (internal quotations and citations omitted).

At trial, Abellera argued that his belief that K.W. was a prostitute showed he sought consensual sex and therefore indicated he did not have a mental abnormality of obtaining arousal through nonconsensual sex. But as the trial court noted, while whether Abellera believed K.W. was a prostitute may be

relevant, the defense did not show a connection between the DOC considering the location as being a high prostitution area and Abellera's state of mind. Accordingly, the evidence was not relevant for this purpose. We conclude the trial court did not abuse its discretion in determining that the CCO Conaty's testimony was not relevant to show Abellera's state of mind.

b. ER 403

As to CCO Conaty's testimony that the DOC would prevent Abellera from returning to where he picked up K.W., the trial court ruled that ER 403 barred it. Under ER 403, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Again, we review a trial court's ruling on the admissibility of evidence for a manifest abuse of discretion. Johnson, 185 Wn. App. at 670.

The court did not abuse its discretion by determining that the prejudicial impact of the evidence and the risk of confusing the jury outweighed the probative value of the evidence. Because the issue at trial was whether Abellera had a mental abnormality that makes him likely to reoffend, whether he could return to a single high prostitution area when released was only minimally relevant. That the defense put on other testimony that the DOC would monitor Abellera with an ankle bracelet and not permit him to go to areas of high prostitution further decreased the probative value of the evidence. Moreover,

11

admitting the testimony risked confusing the jury by potentially suggesting that issues for them to decide at the trial included the terms of Abellera's DOC supervision, whether the area was known for high prostitution, and whether K.W. was a prostitute. Accordingly, the trial court did not err by refusing to allow CCO Conaty's testimony.[3]

B. Prejudicial Evidence

Abellera contends the trial court erred by admitting several pieces of evidence that it should have excluded as unfairly prejudicial under ER 403. The State argues the court properly admitted the evidence. We address each argument in turn.

We review a trial court's ruling on the admissibility of evidence for a manifest abuse of discretion. Johnson, 185 Wn. App. at 670. We will overturn the trial court's determination on relevance or prejudice only if no reasonable person would adopt the same view as the court. Johnson, 185 Wn. App. at 670-71.

Again, under ER 403, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

___

[3] The trial court ruled alternatively that CCO Conaty's testimony constituted inadmissible hearsay. The parties' briefing focuses on this issue. But because this was an alternative ground for the court's decision to exclude the testimony, and we affirm the court's decisions under ER 401, ER 402, and ER 403, we do not address the hearsay issue. Notably, however, Abellera does not cite any legal authority to support his contention that because the State of Washington is a party, all its agencies qualify as party opponents for the purposes of ER 801(d)(2).

### 1. Victim Testimony

Abellera claims the trial court erred by admitting victim testimony regarding his conviction for criminal trespass. The State contends that case law clearly allows such evidence in SVP trials. We agree with the State.

Here, the victim in the criminal trespass matter, S.M., testified at his SVP trial. She stated that she was asleep at her friend's apartment when Abellera entered the place without permission. Abellera approached her, put his head about four inches away from hers, and told her to be quiet. S.M. screamed and Abellera ran off. The police apprehended Abellera approximately 15 to 30 minutes later. Dr. Arnold testified that the crime was sexually motivated.

Our Supreme Court has held that the testimony of a victim of a sexually motivated offense is relevant in an SVP proceeding. Turay, 139 Wn.2d at 401. Even though victim testimony often has a substantial impact on the jury, ER 403 does not necessarily exclude it because "[i]n assessing whether an individual is a sexually violent predator, prior sexual history is highly probative of [their] propensity for future violence." In re Pers. Restraint of Young, 122 Wn.2d 1, 53, 857 P.2d 989 (1993). Victim testimony is admissible "not solely to prove the element of prior conviction, but rather to assess the mental state of the alleged SVP, the nature of [their] sexual deviancy, and the likelihood that [they] will commit a crime involving sexual violence in the future." Turay, 139 Wn.2d at 401.

Because the State presented testimony that the crime was sexually motivated, the details of Abellera's criminal trespass were probative of whether he would commit a future sexual offense. See Young, 122 Wn.2d at 53. We determine the trial court did not manifestly abuse its discretion by admitting the testimony.

### 2. Precursor Treatment

Abellera next argues that the trial court erred by admitting testimony relating to his participation in precursor treatment,[4] because it was irrelevant and prejudicial. The State claims that the trial court properly admitted the evidence because it was relevant to Abellera's risk of reoffending.[5] We conclude the trial court did not manifestly abuse its discretion by admitting the evidence.

At trial, the State sought to elicit testimony that Abellera had started precursor treatment shortly before trial. Abellera argued the court should exclude the evidence as irrelevant. The court ruled that the evidence was relevant and admissible under ER 403. It determined that "[Abellera's] decision to only engage in this precursor treatment and the timing of it . . . is relevant to the issues of his status and being treated or not treated, and whether he's likely to re-offend."

---

[4] Precursor treatment refers to a course offered at the Special Commitment Center (SCC) as a prerequisite to sex offender treatment, which aims to prepare participants for such treatment.

[5] The State also claims that Abellera waived this issue because below he only objected to the admission of evidence regarding "[his] 'non-participation in sex offender treatment at the [Special Commitment Center].'" However, the record shows Abellera argued that his "start[ing] down the road to treatment on the eve of trial" was not relevant. Accordingly, he did not waive this issue.

Dr. Arnold then testified that though Abellera could have immediately enrolled in precursor treatment when he first entered the Special Commitment Center (SCC) in 2014, he instead waited to do so until shortly before trial. He said Abellera being at the SCC for over three years before attempting to start treatment was "a big red flag because he's really wasted a lot of time that he could have been spending making sure that he's safer when he's released to the community or reduces his risk to re-offend." The State also admitted a progress note from his precursor treatment that said he displayed treatment-inhibiting behavior.

"[W]hen offered for the purpose of showing the respondent has a mental abnormality or a personality disorder, evidence of the SCC's treatment programs, confinement conditions, and transitional facilities is irrelevant and inadmissible, unless the testimony relates the respondent's treatment history." West, 171 Wn.2d at 398. Evidence regarding a respondent's past treatment is relevant to show that the respondent may be less likely or less willing to control their mental abnormality if living freely in the community—which relates to the likelihood of reoffending. West, 171 Wn.2d at 397. "[T]he State is free to offer evidence of the treatment a sexual offender should get and to compare that with the treatment the respondent has actually received." West, 171 Wn.2d at 398.

In this case, the State used the precursor treatment evidence for two purposes. First, it argued that Abellera's risk of reoffending was higher because he had gone three years without receiving any treatment. Second, the State

contended the timing of Abellera starting treatment, namely shortly before trial, suggested that he may be disingenuously pursuing the treatment. Accordingly, the evidence was admitted for the proper purpose of addressing whether Abellera would reoffend.[6] Given the probative value of the evidence, the trial court did not manifestly abuse its discretion by admitting it.

### 3. Static-99R

Abellera next contends that the court admitted impermissible profile testimony by Dr. Arnold when he stated that the Static-99R underestimates recidivism. He asserts that while such actuarial assessments are admissible, Dr. Arnold's testimony constituted unduly prejudicial testimony because he "drew a direct line between the Static-99's underestimation of risk due to undetected offending, and the fact that Mr. Abellera committed undetected offenses." The State claims the trial court properly admitted the testimony under ER 403. We determine the trial court did not manifestly abuse its discretion by admitting the evidence.

A Static-99R constitutes "a collection of ten variables that have been shown through research to be related to sexual offense recidivism." It operates

---

[6] Abellera also relies on In re Det. of Post, 170 Wn.2d 302, 241 P.3d 1234 (2010), to argue that the trial court should not have admitted evidence that he had begun precursor treatment. But in that case, the Court limited its review to "the admissibility of evidence about the content of SCC programs in which Post had not yet participated and the admissibility of evidence that Post could later be released to a less restrictive alternative if he were committed." 170 Wn.2d at 310. The Supreme Court noted that "[i]nsofar as the State's argument pertains to SCC treatment already undergone by Post, that question is not before us and we assume, as the Court of Appeals held, that such evidence is relevant and otherwise admissible." Post, 170 Wn.2d at 313. Thus, because Post did not address the admissibility of evidence regarding a respondent's past treatment, the case is inapposite.

as an "actuarial risk assessment tool for assessing risk in sex offenders." Both experts used the Static-99R to predict Abellera's risk of reoffending if not confined at the SCC.

At trial, Dr. Arnold explained that because the Static-99R measures group rates of re-offense, it was not necessarily predictive of Abellera's risk of re-offending. He stated that the Static-99R might underestimate Abellera's risk of re-offending because it does not take undetected sexual offenses into account. Dr. Arnold explained that about two thirds of Abellera's crimes were undetected.

Generally, "profile testimony that does nothing more than identify a person as a member of a group more likely to commit the charged crime is inadmissible owing to its relative lack of probative value compared to the danger of its unfair prejudice." State v. Braham, 67 Wn. App. 930, 936, 841 P.2d 785 (1992). Our Supreme Court, however, has held that "actuarial assessments, which satisfy the requirements of ER 403, ER 702, and ER 703 are admissible and not profile evidence." In re Det. of Thorell, 149 Wn.2d 724, 758, 72 P.3d 708 (2003).

Unlike Abellera claims, Dr. Arnold 's testimony that the Static-99R underestimates the rate of recidivism due to undetected crimes did not profile him as an SVP because of his undetected crimes, but rather went to the issue of whether Abellera would reoffend in the future. Though testimony regarding the future dangerousness of SVPs is prejudicial, "[t]he probative value of this testimony is high and directly relevant to whether an individual should be committed as a sexually violent predator." Thorell, 149 Wn.2d at 758. Based on

the high probative value of such evidence, the Supreme Court has "already rejected challenges to predictions of dangerousness under ER 403." Thorell, 149 Wn.2d at 758. Thus, under the case law, the testimony regarding how accurately the Static 99-R predicted Abellera's risk of reoffending had probative value that outweighed any prejudicial impact. We conclude that the trial court did not manifestly abuse its discretion by admitting the testimony.

4. Use of SVP Criteria for Selection of "High Risk" Norms

For purposes of the Static-99R, both experts agreed that Abellera scored an 8. The next step for the experts was to compare how a score of 8 "rates in comparison to other sex offenders in terms of percentile," and then link that score to recidivism rates. To conduct this comparison, the experts placed Abellera into one of two groups: the routine group or the high risk group. The experts disagreed as to the group in which to place Abellera.

Over Abellera's objection, Dr. Arnold testified that he placed Abellera in the high risk group, in part, because of "[t]he context of the referral." Dr. Arnold stated that Abellera's referral for an SVP evaluation came from the End of Sentence Review Committee, which only recommends a "very small subset of individuals." Dr. Arnold later explained that the Committee recommends less than five percent of sexual offenders for civil commitment.

Abellera argues that the court should have excluded this testimony as unduly prejudicial because it conveyed to the jury that the State believed Abellera "is one of the 5% of most dangerous sex offenders in the state." The State

claims the court properly allowed Dr. Arnold to testify as to why he placed Abellera in the high risk group, especially given that the defense's expert had placed him in the routine group. Though this issue presents a closer question, we determine the court properly admitted the testimony.

Here, the testimony related to Dr. Arnold's assessment of Abellera's future risk. Additionally, this testimony carried heightened probative value because Dr. Plaud disagreed that Abellera was in the high risk group. Because experts use the Static-99R to estimate future risk for all sexual offenders, the referral showed that Abellera may fall into the high risk group. Though the testimony prejudiced Abellera, it was not unduly so because the State did not use it to argue that this conclusively meant that he was an SVP. Instead, it used the evidence to explain Dr. Arnold's assessment. Dr. Arnold additionally testified that he placed Abellera in the high risk group based on his score on the structured risk assessment-forensic version (SRA-FV).[7] The trial court did not manifestly abuse its discretion by admitting the testimony.

The State additionally contends that, assuming the court erred by admitting the testimony, the error was harmless because the testimony was brief, limited in scope, and not unduly prejudicial when considering the entirety of the record. Indeed, the jury heard testimony that Dr. Arnold believed Abellera was of a small percentage of rapists who suffered from a paraphilic disorder, and that is

---

[7] The SRA-FV is an "abstract framework for psychological factors liable to predispose offenders to repeated sexual offending." David Thornton & Raymond A. Knight, Construction and Validation of SRA-FV Need Assessment, 27 SEXUAL ABUSE 360, 361 (2015).

why he diagnosed Abellera as an SVP. Dr. Arnold additionally testified, without objection, that Abellera had committed approximately 31 to 35 rapes and attempted rapes. Abellera admitted to raping six women in the 1980s and K.W. in 2009. Given this testimony, the jury could have already inferred that Abellera belonged to a small subset of rapists that the State considered to be especially dangerous. See West, 171 Wn.2d at 410-11 (evidentiary error prejudices defendant if, within reasonable probabilities, it materially affects outcome of trial).

Furthermore, jury instruction number 4 provided:

When Dr. Arnold and Dr. Plaud testified, I informed you that some information was admitted as part of the basis for [Dr. Arnold's and Dr. Plaud's] opinions, but may not be considered for other purposes. *You must not consider this testimony as proof that the information relied upon by the witness is true.* You may use this testimony only for the purpose of deciding what credibility or weight to give the witness's opinion.

(Emphasis added.) Jurors are presumed to follow the court's instructions. State v. Kalebaugh, 183 Wn.2d 578, 586, 355 P.3d 253 (2015). We thus presume that the jury did not consider the testimony as proof that Abellera was an SVP, but rather considered it as a basis for Dr. Arnold's assessment. Accordingly, any error in admitting the testimony was harmless.

5. Conduct Other Than Sexual Offending

Abellera claims ER 403 prevented the court from admitting portions of his deposition relating to his past misconduct as an employee. The State asserts that the evidence was relevant because it went to Dr. Arnold's diagnosis of

Abellera having antisocial and avoidant personality traits. We determine the court did not manifestly abuse its discretion by admitting the evidence.

In pretrial motions, Abellera moved to exclude portions of his deposition where the State inquired into write-ups he received while working at the bakery. He contended that whether he was a good employee was not relevant to the issue of whether he constitutes an SVP. The court admitted the work history.

At trial, the State cross-examined Abellera on his work history. Specifically, the State asked about write-ups he received from his employer for threatening a coworker by saying he would "kick his ass," for shoving a coworker and using a racial slur, for "slugg[ing]" a coworker in the shoulder, for shoving a coworker, and for using abusive language towards a coworker. These incidents occurred in 1995, 1996, 2000, 2002, and 2009. The court additionally admitted the write-ups as exhibits.

The main issue at trial was whether Abellera was an SVP, i.e., whether he had a mental abnormality that prevented him from controlling his actions. Dr. Arnold testified that Abellera had an "other specified paraphilic disorder" involving interest in nonconsensual sex and antisocial and avoidant personality traits that exacerbated his paraphilic disorder. Dr. Arnold connected Abellera's misconduct at work to his antisocial and avoidant personality traits by stating that the traits are manifested by the "failure to conform to social norms with respect to lawful behaviors." Dr. Arnold further explained that Abellera's attempt to minimize his issues at work despite more than 20 instances of misconduct on his

records showed deceitfulness–an antisocial trait. Thus, Abellera's work history was relevant as to whether he would reoffend, because it related to whether he had personality traits that exacerbated his diagnosed paraphilic disorder. We determine that the trial court did not abuse its discretion by admitting the evidence.

### C. Rebuttal Testimony

Abellera claims the trial court improperly allowed the State to present rebuttal testimony because he did not raise any new issues during the presentation of his defense. The State contends the court's decision was within its sound discretion. We agree with the State.

After Dr. Plaud testified, the State asked to call Dr. Arnold to give rebuttal testimony. Abellera objected, asserting that because Dr. Plaud's testimony was consistent with the opinions he gave in his deposition, his defense did not raise new matters that would enable the State to present rebuttal testimony. The State argued that the court should allow its expert to address the topics discussed by Dr. Plaud. Although the State admitted that it approached some of these topics with its expert during its case in chief, it stated it did not fully explore them because it did not know precisely how Dr. Plaud would testify when giving his opinions.

The court allowed the rebuttal testimony. It stated that to the extent the State strategically chose to not introduce evidence that the respondent decided to present, it was well within the State's rights to respond.

22

In his rebuttal testimony, Dr. Arnold responded to Dr. Plaud's claim that his diagnosis was "made-up" by testifying to the psychological community's consensus regarding the existence of his diagnosis. Dr. Arnold then explained why he diagnosed Abellera with a paraphilic disorder despite such disorders being difficult to diagnosis. He also testified about Dr. Plaud's critiques of the SRA-FV. Dr. Arnold additionally addressed statements Abellera had made to Dr. Plaud about his mother and Dr. Plaud's opinions that (1) anger motivated Abellera's crimes, (2) Abellera's good behavior at the SCC suggested he would not reoffend, and (3) a professional organization for experts on sex offenders did things that Dr. Plaud did not approve of.

"[T]he question of admissibility of evidence on rebuttal rests largely on the trial court's discretion, and error in denying or allowing it can be predicated only upon a manifest abuse of that discretion." State v. White, 74 Wn.2d 386, 395, 444 P.2d 661 (1968).

Courts may admit rebuttal evidence to enable a plaintiff to respond to a new matter raised by the defense. White, 74 Wn.2d at 394. Though rebuttal evidence should not be simply a recitation of evidence in chief, "[f]requently true rebuttal evidence will, in some degree, overlap or coalesce with the evidence in chief." White, 74 Wn.2d at 395.

Here, the court acted within its discretion when ruling to allow the rebuttal evidence. Though Dr. Arnold's rebuttal testimony did overlap somewhat with his testimony during the State's case in chief, his testimony was largely in reply to

new matters raised during Dr. Plaud's testimony.[8] Though the State had touched on some of topics during Dr. Arnold's original testimony, on rebuttal it addressed them in a manner that directly responded to Dr. Plaud's testimony. This was not an instance where the rebuttal testimony was "simply a reiteration of evidence in chief" or where the State intentionally withheld evidence merely to present the evidence cumulatively at the end of the respondent's case. White, 74 Wn.2d at 394. We determine trial court did not manifestly abuse its discretion by permitting the rebuttal testimony.

### D. Argument Regarding Burden of Proof

Abellera argues that the court erred by not allowing him to argue a presumption of non-commitment in his closing argument. He contends such a presumption exists because the presumption of innocence is closely related to the State's burden to prove a crime beyond a reasonable doubt, and the State must similarly prove that a respondent is an SVP beyond a reasonable doubt. But we have already rejected this argument. In In re Det. of Twining, we rejected a jury instruction on a presumption of non-committal because SVP trials are not criminal cases. 77 Wn. App. 882, 895, 894 P.2d 1331 (1995) overruled on other grounds, In re Det. of Pouncy, 168 Wn.2d 382, 229 P.3d 678 (2010). Because SVP trials are not criminal in nature, "criminal constitutional protections are not applicable beyond those supplied in the statute and those granted in Young."

---

[8] Abellera argues that Dr. Plaud did not raise new matters because Dr. Plaud had previously discussed these issues during his deposition. But Abellera cites no legal authority to support this proposition. We reject this argument.

Twining, 77 Wn. App. at 895 (citing RCW 71.09.060; Young, 122 Wn.2d at 47-51). Because no presumption of non-committal exists in SVP trials, it does not matter, as Abellera contends, that Twining addressed jury instructions while below he sought to discuss the presumption in closing argument. Accordingly, Abellera was not entitled to argue a presumption of non-commitment in his closing argument. We decide that the trial court did not err by refusing to allow him to do so.[9]

### E. Sufficiency of the Evidence

Finally, Abellera asserts that the State did not present sufficient evidence to prove that he had a mental abnormality that resulted in a lack of volitional control. The State claims Dr. Arnold's testimony alone sufficiently established this element. We agree with the State.

As discussed above, the State must prove three elements beyond a reasonable doubt for a jury to find a respondent constitutes an SVP:

> (1) that the respondent has been convicted of or charged with a crime of sexual violence, (2) that the respondent suffers from a mental abnormality or personality disorder, and (3) that such abnormality or disorder 'makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility.

West, 171 Wn.2d at 397 (internal quotations and citations omitted).

"In a sufficiency challenge, the evidence is viewed in the light most favorable to the State, and all reasonable inferences from the evidence must be

---

[9] Abellera also argues that this court should reverse his conviction under a cumulative error analysis. However, because we determine that the trial court did not err, or that any error was harmless, we reject this argument. See State v. Emery, 174 Wn.2d 741, 766, 278 P.3d 653 (2012) (one error); State v. Stevens, 58 Wn. App. 478, 498, 794 P.2d 38 (1990) (no prejudicial error).

drawn in favor of the State and interpreted most strongly against the respondent." In re Det. of Audett, 158 Wn.2d 712, 727, 147 P.3d 982 (2006) (internal citation omitted). Courts will uphold a commitment "if any rational trier of fact could have found the essential elements beyond a reasonable doubt." Audett, 158 Wn.2d at 727-28.

Abellera argues that the State lacked sufficient evidence to meet only the third element–i.e., that he had a mental abnormality or personality disorder making him likely to engage in predatory acts of sexual violence if not confined in a secure facility. Though evidence that the respondent has a mental abnormality is insufficient to prove a serious lack of control, "a diagnosis 'when coupled with evidence of prior sexually violent behavior and testimony from mental health experts, which links these to a serious lack of control, is sufficient for a jury to find that the person presents a serious risk of future sexual violence and therefore meets the requirements.'" Audett, 158 Wn.2d at 728 (quoting Thorell, 149 Wn.2d at 761-62).

Here, the State claims Dr. Arnold's testimony was sufficient to establish the third element beyond a reasonable doubt. At trial, Dr. Arnold testified that he had diagnosed Abellera with "other specified paraphilic disorder" involving interest in nonconsensual sex and antisocial and avoidant personality traits that exacerbated his paraphilic disorder. Additionally, when viewing the facts in the light most favorable to the State, it presented extensive evidence demonstrating that Abellera could not control his urge to force women into nonconsensual sex.

26

Dr. Arnold approximated that Abellera had committed between 31 and 35 rapes and attempted rapes. Furthermore, Abellera committed rape in 2009 despite seven years of sex offender treatment and 20 years in the community without a convicted sex offense. Though Abellera argues these 20 years in the community show his ability to control himself, the jury could also have viewed this as evidence, as Dr. Arnold opined, of a "stark example of how chronic this kind of deviant sexual interest can be."

To further demonstrate Abellera's inability to exhibit control, Dr. Arnold pointed to Abellera being unable to stop sexually assaulting women even though he felt remorseful for doing so. Additionally, he stated that based on statements Abellera had made that "rape is the very worst thing" you can do in society, Abellera continued to commit the assaults even though it violated his own moral code. Dr. Arnold opined that Abellera could not control his urge to commit sexual assault if presented with the opportunity. Given this record and viewing the evidence in the light most favorable to the State, we conclude sufficient evidence exists to establish the third element.

Affirmed.

_Chun, C.J._

WE CONCUR:

_Leach, J._          _Appelwick, C.J._

27